Thomas W. **WEXLER**, individually and as parent and natural guardian of Daniel Wexler, Appellant,

v.

**BROTHERS ENTERTAINMENT GROUP, INC., d/b/a TeleFun Trivia, et al., Respondents.**

No. C0–90–78.

Court of Appeals of Minnesota.

June 12, 1990.

Thomas W. Wexler, Minneapolis, pro se.

William R. Skolnick, LuAnn M. Petricka, Minneapolis, for respondents.

Considered and decided by FOLEY, P.J., and HUSPENI and LESLIE,* JJ.

## OPINION

FOLEY, Judge.

Thomas W. Wexler, individually and as parent and natural guardian of Daniel Wexler, appeals from summary judgment that he lacks standing to assert false advertising, consumer fraud, and illegal gambling claims against respondents Brothers Entertainment Group Inc., d/b/a TeleFun Trivia, Mark S. Stern, Gary D. Stern, U.S. West Communications, and John Doe and Mary Roe. Respondents seek review of the trial court's denial of their motion for an award of costs and attorney fees. We reverse and remand.

## STATEMENT OF FACTS

Brothers is a Florida corporation that owns the TeleFun Trivia game. Brothers operated TeleFun Trivia in Minnesota until Brothers ceased operation on May 31, 1989 pursuant to an assurance of discontinuance entered into with the Minnesota Attorney General. Mark and Gary Stern are officers and directors of Brothers.

TeleFun Trivia is accessed by telephone by calling a 976 number. Players are given a brief description of the game and are asked to select one of several categories (bible, sports, wrestling, soap opera, and music) in which to compete. There are 200 questions within each category, which are distributed according to their degree of difficulty. Questions within each degree of difficulty are selected randomly when a player calls. A player accumulates points on the basis of correct answers and how fast the person answers the question. Each call involves up to four questions. If the caller gets two out of the first three questions correct, the caller can double his points by answering the fourth question correctly. If the player misses the fourth question, no points are awarded for that call. If the player stops after the third question, the player retains the points won on that call. The player who has accumulated the most points is eligible to receive the monthly grand prize. The competitors do not know how many points are needed to win, nor do they know how the other competitors are doing.

Brothers contracts with the local phone company, here U.S. West Communications, and users are billed by U.S. West for the charges to play the game. The call is made to a local computer; telephone charges are 99¢ per minute. No relationship exists between the value of prizes awarded and the total money spent by the caller. At the time this matter was initiated, no one from Minnesota had received a grand prize. Brothers indicated in its answers to interrogatories that it was waiting to announce winners in the Minneapolis area because it was in the process of verifying winners' eligibility. No prizes were awarded without proof of payment of the telephone bill.

In July 1988, Daniel Wexler, Thomas Wexler's 15-year-old son, made 223 TeleFun Trivia calls. Daniel's affidavit states that he accumulated over 425,000 points during that month. Daniel also placed four calls to TeleFun in August, shortly before Wexler received his July phone bill. Wexler's July phone bill reflected over $770 in charges directly attributable to Daniel's calls. Daniel was notified on February 1, 1989 that he was in fact the grand prize winner for the month of July.

On August 25, 1988, Wexler contacted U.S. West and had a block placed on the telephone line to prevent future 976 calls. Wexler also received a credit for the month of July on his telephone bill. The August bill reflected $10.89 plus tax for TeleFun charges. Wexler began this lawsuit on October 25, 1988.

## ISSUE

Did the trial court err in granting summary judgment?

## ANALYSIS

A Rule 56 motion for summary judgment is a proceeding designed to determine whether issues of fact exist, but not to

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

decide disclosed and disputed issues of material fact. Minn.R.Civ.P. 56.03. The meaning and purpose of a summary judgment motion and a description of an appellate court's duty in reviewing the trial court's decision is set forth by the Minnesota Supreme Court in the oft-cited case of *Sauter v. Sauter*, 244 Minn. 482, 70 N.W.2d 351 (1955):

A motion for a summary judgment may be granted pursuant to Rule 56.03 only if, after taking the view of the evidence most favorable to the nonmoving party, the movant has clearly sustained his burden of showing that there is no *genuine issue* as to any *material fact* and that he is entitled to judgment as a matter of law. It is essential to bear in mind that the moving party has the burden of proof and that the nonmoving party has the benefit of that view of the evidence which is most favorable to him. The salutary purpose and useful function of summary judgment proceedings as a means of securing the just, speedy, and inexpensive determination of the action * * * is well recognized, but resort to summary judgment was never intended to be used as a substitute for a court trial or for a trial by jury where any genuine issue of material fact exists. In other words a summary judgment is proper where there is no issue to be tried but is wholly erroneous where there is a genuine issue to try.

* * * The controlling words *genuine issue* and *material fact* need no amplification since they best speak for themselves. Their application in determining whether there is an absence of a *genuine issue* as to a *material fact* requires a careful scrutiny of the pleadings, depositions, admissions, and affidavits, if any, on file. Since, however, all factual inferences must be drawn against the movant for summary judgment, it follows that, even where the movant's supporting documents are uncontradicted, they may in themselves be insufficient to sustain his burden of proof.

*Id.* at 484–85, 70 N.W.2d at 353 (emphasis in original) (footnotes omitted).

After finding that Wexler failed to show any evidence of monetary loss due to alleged wrongful conduct, the trial court concluded that Wexler lacked standing to assert any of his claims. Wexler, however, claims that a fact question exists regarding the payment of $11.89 in TeleFun Trivia charges for the month of August. Wexler disputes the trial court's finding that U.S. West credited Wexler's account for that amount.

*Consumer Protection Claims*

Wexler alleges that Brothers and the Sterns have engaged in deceptive advertising and consumer fraud in violation of Minn.Stat. §§ 325F.67, 325F.69 (1988). Minn.Stat. § 325F.67 prohibits advertisement which is "untrue, deceptive, or misleading." Minn.Stat. § 325F.69, subd. 1 defines unlawful practices under Minnesota's Consumer Fraud Act:

The act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is enjoinable as provided herein.

" 'Merchandise' means any objects, wares, goods, commodities, intangibles, real estate, or services." Minn.Stat. § 325F.68 (1988). Brothers is selling a service or intangible, the playing of the game Tele-Fun Trivia. Minnesota's private attorney general statute authorizes "any person" injured by a violation of Minn.Stat. § 325F.67 or Minn.Stat. § 325F.69 to bring a civil action to recover damages together with costs and disbursements, including costs of investigation and reasonable attorney fees, and other equitable relief. Minn.Stat. § 8.31, subd. 3a (1988).

■ In order to prevail on a consumer protection claim, Wexler must prove that Brothers and the Sterns violated Minn.Stat. § 325F.67 or Minn.Stat. § 325F.69 and that Wexler was injured in some way by the violation. Wexler alleges that Brothers and the Sterns advertised that contestants could win cars, boats, trips and other

monthly grand prizes by playing TeleFun Trivia. Allegedly, as of March 17, 1989, more than seven months after Daniel called TeleFun Trivia, Brothers and the Sterns had awarded no prizes. Assuming for purposes of this appeal that these allegations are true, the trier of fact could find that Brothers and the Sterns never intended to award any prizes and had engaged in false and misleading advertising and fraud for the purpose of inducing persons to play TeleFun Trivia.

■ As to injury, nominal damages support a cause of action under the Consumer Fraud Act.

> The Consumer Fraud Act is designed to encourage persons to take action to stop the fraudulent activity covered by the act, even though the amount actually lost may be small.

*Yost v. Millhouse*, 373 N.W.2d 826, 832 (Minn.App.1985). The evidence on payment of $11.89 in TeleFun Trivia charges is inconclusive. An attorney for U.S. West stated in an affidavit that "all telephone charges incurred playing TeleFun Trivia * * * have been credited to [Wexler's] account." Wexler claims that he paid the $11.89 himself and that his account was not credited. Copies of Wexler's telephone bills from September 1988 through April 1989 do not show a credit of $11.89 by U.S. West. Although the bills show that the $11.89 was paid, that amount is not recorded in the adjustment column where the credit of $770 for the July TeleFun Trivia charges is recorded. Who paid the $11.89 is a fact issue to be resolved at trial on the merits.

■ The trial court concluded as a matter of law that even if Wexler had incurred a monetary loss, he was not entitled to recover damages because he failed to act reasonably to prevent those damages. *Bemidji Sales Barn v. Chatfield*, 312 Minn. 11, 17, 250 N.W.2d 185, 189 (1977). Daniel stated in his affidavit that he told his mother after he made two calls to TeleFun Trivia in July and that she told him not to make any more calls. It seems Wexler did nothing else at that point. After receiving the July phone bill in mid August,

Wexler contacted the phone company and had a block placed on his phone line by August 25, 1988. The trial court apparently concluded that Wexler should have had a block placed on his line immediately after learning about Daniel's calls. As Wexler points out, however, there are reasons a person might opt against a 976 block. It blocks all calls to all 976 numbers. Perhaps, Wexler had cause to believe Daniel would obey his mother, thereby making a 976 block unnecessary. Whether Wexler acted reasonably to prevent damages or whether he should have done more is a fact issue to be decided at trial.

■ In addition to actual damages, Wexler may also be entitled to punitive damages. Minn.Stat. § 549.20 (1988) provides for punitive damages "upon clear and convincing evidence that the acts of the defendant show a willful indifference to the rights or safety of others." The trial court has discretion to allow punitive damages in consumer fraud cases. *See Yost*, 373 N.W.2d at 832.

Wexler also seeks injunctive relief. The trial court concluded there was nothing to enjoin. On June 30, 1989 Brothers and Mark Stern entered into an assurance of discontinuance with the Minnesota Attorney General as authorized by Minn.Stat. § 8.31, subd. 2b (1988). The assurance of discontinuance permanently enjoins Brothers and the Sterns from operating TeleFun Trivia in Minnesota unless they make specified disclosures about winners and prizes, maintain sufficient funds to buy prizes, and award prizes within 60 days of the end of a contest. The assurance of discontinuance appears to comprehensively address the issue of injunctive relief. Although we agree there is currently nothing for the trial court to enjoin, we do not foreclose Wexler from raising the issue during trial if circumstances change so as to make injunctive relief appropriate at that time.

■ If Wexler prevails at trial on one or both of his consumer protection claims, he is entitled to costs and attorney fees under Minn.Stat. § 8.31, subd. 3a. When awarding attorney fees under the private attorney general statute, the trial court

must consider the public interest policies underlying the statute. *Liess v. Lindemyer*, 354 N.W.2d 556, 558 (Minn.App. 1984). The fact that Wexler, a licensed attorney, acted as his own attorney, although perhaps relevant, does not eliminate his right to costs and attorney fees.

Wexler claims the Sterns are proper parties to this lawsuit because they participated in Brothers' allegedly fraudulent acts. This issue was not addressed by the trial court and should be resolved on remand.

*Gambling Claims*

 Wexler alleges that the TeleFun Trivia contest is gambling that violates Minn.Stat. §§ 609.75, 609.755, and 609.76 (1988). There are three general categories of illegal gambling: lotteries, betting and gambling devices.

A lottery is a plan which provides for the distribution of money, property, or other reward to persons selected by chance from among participants some or all of whom have given a consideration for the chance of being selected.

Minn.Stat. § 609.75, subd. 1.

A bet is a bargain whereby the parties mutually agree to a gain or loss by one to the other of specified money, or property or benefit dependent upon chance although the chance is accompanied by some element of skill.

Minn.Stat. § 609.75, subd. 2.

A gambling device is a contrivance which for a consideration affords the player an opportunity to obtain something of value, other than free plays, automatically from the machine or otherwise, the award of which is determined principally by chance.

Minn.Stat. § 609.75, subd. 4. An "injured person" may bring a civil action to recover damages sustained for violations of the criminal code. Minn.Stat. § 611A.05 (1988).

The trial court concluded that Wexler's gambling claim failed as a matter of law because Wexler did not present any facts indicating that the TeleFun Trivia contest is a game of chance. In TeleFun Trivia points are awarded on the basis of correct responses to questions. However, factors of chance, including the number of players in a given month and the number of calls made by various players, thwart the elements of skill. These factors of chance create a factual issue as to whether TeleFun Trivia is illegal gambling.

Because material fact issues exist as to whether respondents committed fraud, whether Wexler was injured by the alleged fraud, and whether TeleFun Trivia is illegal gambling, summary judgment is inappropriate. Because the trial court concluded as a matter of law that TeleFun Trivia is not gambling, the trial court did not reach and we do not address the issue of what damages support a cause of action under Minn.Stat. § 611A.05.

Respondents seek review as to whether the trial court abused its discretion in denying their motion for costs and attorney fees under Minn.Stat. § 549.21, subd. 2 (1988). All requests for costs and attorney fees are deferred until final resolution of the case at the trial court level.

## DECISION

There are material issues of fact as to whether Wexler sustained damages as a result of Brothers and the Sterns' alleged violations of Minnesota's consumer protection laws and whether TeleFun Trivia violates Minnesota gambling laws.

All requests for costs and attorney fees are deferred until final resolution of the case at the trial court level.

Because of our disposition of this case, we do not reach the issue of alleged ex parte communications to the trial judge, nor did we consider the correspondence received after oral argument in making our decision.

We reverse and remand for further proceedings in light of this opinion.

Reversed and remanded.