**TRANSCLEAN CORPORATION, James P. Viken, Jon A. Lang, and Donald E. Johnson, Plaintiffs,**

v.

**BRIDGEWOOD SERVICES, INC., Defendant.**

**No. CIV 97–2298 RLE.**

United States District Court, D. Minnesota.

Feb. 13, 2001.

Jon S. Swierzewski, Alan Marshall Anderson, Renee L. Jackson, Christopherson K. Larus, Larkin Hoffman Daly & Lindgren, Bloomington, MN, for Plaintiffs.

Karl L. Cambronne, Becky L. Erickson, Chestnut & Cambronne, Minneapolis, MN, Warren E. Olsen, Fitzpatrick Cella Harper & Scinto, Washington, DC, for Defendant.

## ORDER

ERICKSON, United States Magistrate Judge.

### I. *Introduction*

This matter came before the undersigned United States Magistrate Judge pursuant to the consent of the parties, as authorized by the provisions of Title 28 U.S.C. § 636(c), upon the parties' cross-Motions for Attorney's fees. No request for oral argument having been received, and deeming such argument to be unnecessary, we render our decision on the parties' respective written submissions.

For these purposes, the Plaintiffs Transclean Corporation, James P. Viken, Jon A. Lang, and Donald E. Johnson ("Transclean"), have appeared by Alan M. Anderson and Christopher K. Larus, Esqs., and the Defendant Bridgewood Services, Inc. ("Bridgewood"), has appeared by Warren E. Olsen and Karl L. Cambronne, Esqs.

For reasons which follow, we grant Transclean's request for attorneys fees and costs, in part, by awarding fees and costs, only as to Bridgewood's claim of inequitable conduct, in the amount of $52,001.75. We deny Bridgewood's request for an award of fees and costs, on Transclean's unsuccessful trademark claims, as we do not find that aspect of the case to have been "exceptional."

### II. *Discussion*

In our Order of January 8, 2001, we concluded that Transclean was legally entitled to attorneys' fees and costs, on its successful false advertising claim, and on its defense against Bridgewood's claim that Transclean had engaged in inequitable conduct. At the behest of Bridgewood, we also formally entered Judgment on our earlier award of Summary Judgment to Bridgewood, on Counts II and III of Transclean's Amended Complaint, which had alleged trademark infringement claims against Bridgewood. See, *Transclean Corp. v. Bridgewood Services, Inc.*, 77 F.Supp.2d 1045, 1101 (D.Minn.1999). As directed by our Order of January 8, Transclean has now submitted, for our *in camera* review, the documents which undergird its request for a total award of $180,135.43 in costs, and attorneys's fees, that are assertedly attributable to its false advertising claim, and to its defense against Bridgewood's allegation that Transclean had engaged in inequitable conduct before the Patent Office.

Consistent with the instructions of this Court, Bridgewood has timely responded to Transclean's request for fees and costs and, on its own part, has filed a request for

an award of fees and costs on Counts II and III of Transclean's Amended Complaint. In turn, Transclean has challenged Bridgewood's entitlement to an award of fees and costs, in defending against Transclean's trademark infringement claims, as not being properly allowable. Since they involve different considerations, we consider the parties' fee requests separately, but only after limning our Standard of Review.

■■■ A. *Standard of Review.* "The request for fees should not result in a second major litigation." *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). "The applicant should exercise 'billing judgment' with respect to hours worked, * * * and should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." *Id.* "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Id.* at 433, 103 S.Ct. 1933; *Slimfold Mfg. Co., Inc. v. Kinkead Indus., Inc.,* 932 F.2d 1453, 1459 (Fed.Cir.1991); citing *PPG Indus. Inc. v. Celanese Polymer Specialties Co., Inc.,* 840 F.2d 1565, 1570 (Fed.Cir.1988). "Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Id.* at 434, 103 S.Ct. 1933. "Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority." *Id.*

■■■ "But '[w]here documentation is inadequate, the district court is not relieved of its obligation to award a reasonable fee.'" *Slimfold Mfg. Co., Inc. v. Kinkead Indus., Inc.,* supra at 1459, quoting *Norman v. Housing Authority of the City of Montgomery,* 836 F.2d 1292, 1303 (11th Cir.1988). Indeed, "a district court itself has experience in determining what are reasonable hours and reasonable fees, and should rely on that experience and knowledge if the documentation is considered inadequate." *Id.,* citing *Norman v. Housing Authority of the City of Montgomery,* supra at 1303; *Saxton v. Sect'y of the Dept. of Health and Human Services,* 3 F.3d 1517, 1521 (Fed.Cir.1993) ("Trial courts routinely use their prior experience to reduce hourly rates and the number of hours claimed in attorney fee requests.").

■■■ "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." [1] *Hensley v. Eckerhart,* supra at 433, 103 S.Ct. 1933; *H.J. Inc. v. Flygt Corp.,* 925 F.2d 257, 260 (8th Cir.1991) ("The approach followed by this circuit requires the calculation of a lodestar figure by multiplying a reasonable hourly rate by the number of hours worked."); *View Engineering, Inc. v. Robotic Vision Systems, Inc.,* 208 F.3d 981, 987 n. 7 (Fed.Cir.2000) ("The lodestar is determined by multiplying the number of hours reasonably expended by the reasonable hourly rate.").

---

**1.** Although not here in contest, we note that, in determining a reasonable hourly rate, "[t]he district court may consider the attorneys' regular hourly rate for similar work," as well as the "skill of representation, difficulty of work performed, counsel's experience, [and] counsel's reputation." *H.J. Inc. v. Flygt Corp.,* 925 F.2d 257, 260 (8th Cir.1991).

Bridgewood does not contest the hourly rates billed by Transclean's lawyers and, upon independent review, we find those hourly rates, for the type of specialized legal work that is involved in this litigation, and given the expertise of the legal counsel involved, to be reasonable.

■ "The product of reasonable hours times a reasonable rate does not end the inquiry," as "[t]here remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'" *Hensley v. Eckerhart,* supra at 434, 103 S.Ct. 1933. In a case in which the plaintiff presents distinctly different claims for relief in a single lawsuit, "even when the claims are brought against the same defendants * * * counsel's work on one claim will be unrelated to his work on another claim" and, "[a]ccordingly, work on an unsuccessful claim cannot be deemed to have been 'expended in pursuit of the ultimate result achieved.'" *Id.* at 435, 103 S.Ct. 1933, quoting *Davis v. County of Los Angeles,* 1974 WL 180, 8 E.P.D. ¶ 9444, at 5049 (C.D.Cal.1974). "If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive award." *Id.* at 436, 103 S.Ct. 1933; *H.J. Inc. v. Flygt Corp.,* supra at 260 ("[W]here the plaintiff [has] achieved only limited success, the district court shall award only that amount of fees that is reasonable in relation to the results obtained."), quoting *Hensley v. Eckerhart,* supra at 440, 103 S.Ct. 1933.

■ "The district court also should exclude from this initial fee calculation hours that were not 'reasonably expended,'" for "[c]ases may be overstaffed, and the skill and experience of lawyers vary widely." *Hensley v. Eckerhart,* supra at 434, 103 S.Ct. 1933, citing *S.Rep. No. 94-1011,* at p. 6; *Jenkins by Jenkins v. State of Missouri,* 127 F.3d 709, 716 (8th Cir. 1997). While the District Court has dis-

cretion in determining the amount of a fee award, "[i]t remains important * * * for the district court to provide a concise but clear explanation of its reasons for the fee award" and, "[w]hen an adjustment is required on the basis of either the exceptional or limited nature of the relief obtained by the plaintiff, the district court should make clear that it has considered the relationship between the amount of the fee awarded and the results obtained." *Id.* at 437, 103 S.Ct. 1933. "However, '[t]here is no precise rule or formula for making these determinations.'" *Wal-Mart Stores, Inc. v. Barton,* 223 F.3d 770, 773 (8th Cir.2000), quoting *Arneson v. Callahan,* 128 F.3d 1243, 1249 (8th Cir.1997), quoting in turn, *Hensley v. Eckerhart,* supra at 436, 103 S.Ct. 1933.

**B. *Legal Analysis.***

1. *Transclean's Request for Fees and Costs.*

Our analysis starts with a recognition that, based upon our prior rulings, only two fairly circumscribed issues warrant an award of fees. First, as the "prevailing party" on its false advertising claim, we concluded that Transclean should be entitled to its reasonable attorney's fees, under Minnesota Statutes Sections 325F.67, and 8.31, Subdivision 3a.[2] See, *LensCrafters, Inc. v. Vision World, Inc.,* 943 F.Supp. 1481, 1491 (D.Minn.1996) ("A person injured by a violation of [Section 325F.67] may * * * in a civil action recover its attorney's fees and costs pursuant to Minnesota Statutes Section 8.31."), citing *Kronebusch v. MVBA Harvestore Sys.,* 488 N.W.2d 490, 494–95 (1992), pet. for rev. denied (Minn., October 20, 1992). Tran-

2. In pertinent part, Section 8.31, Subdivision 3a reads as follows:

 In addition to the remedies otherwise provided by law, any person injured by a violation of [Section 325F.67 and other laws against false or fraudulent advertising] may

bring a civil action and recover damages, together with costs and disbursements, including the costs of investigation and reasonable attorney's fees, and receive other equitable relief as determined by the court.

sclean neither sought, nor did we award it, a reasonable attorney fee under the Lanham Act. See, *Title 15 U.S.C. § 1117* (For a violation of Title 15 U.S.C. § 1125(a), "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party.").[3] See, *Transclean's post-Trial Motion* [Docket No. 182]. Accordingly, we consider what fees, if any, would be reasonable, given Transclean's prevailing party status on its false advertising claim, solely under Minnesota law.

■ As a second basis for attorney fees, we have previously determined that Transclean is entitled to an award of fees, pursuant to Title 35 U.S.C. § 285, because of Bridgewood's litigation misconduct in advancing an inequitable conduct claim, against Transclean, that was frivolous. As we previously observed, "when attorney fees under 35 U.S.C. § 285 are awarded solely on the basis of litigation misconduct, the amount of the award must bear some relation to the extent of the misconduct." *Order of January 8, 2001*, at p. 24, quoting *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 831 (Fed.Cir.1992), abrogated, in part, on other grounds, *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 975 (Fed.Cir. 1995) (en banc), citing *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1553–54 (Fed.Cir.1989).

In comparison to these circumscribed issues, Transclean has represented that, for the entire action, it incurred fees and costs of $878,594.91, and it now seeks an award of fees, on the limited claims we have identified, in the amount of $180,135.43—which is fully one-fifth of the total costs and fees that Transclean incurred in preparing, and trying, its action as a whole. On the other end of the

spectrum, Bridgewood stipulates, without conceding the propriety of any award, that it is agreeable to paying a total of $27,395.50, in relevant fees and costs. As we further detail, we find Bridgewood's fee estimate to be closer to the mark than Transclean's, but for reasons that are different from those advanced by Bridgewood, and not previously addressed by this Court.

### a. Transclean's False Advertising Claim.

■ Apparently believing, that its status as a "prevailing party" is sufficient standing for an award of fees under Section 8.31, Subdivision 1—commonly known as the Private Attorney General Statute ("Private AG Statute")—Transclean seeks fees and costs, in the amount of $126,333.18, on its State false advertising claim. In this belief, Transclean misapprehends the purpose of the Private AG Statute.

Of course, our analysis of this issue is governed by Minnesota law, and the Minnesota Supreme Court last interpreted the purpose and scope of the Private AG Statute, in *Ly v. Nystrom*, 615 N.W.2d 302, 313–14 (2000), as follows:

> The interest of the legislature in creating a supplemental force of private enforcement to address unlawful trade practices is clear from the testimony at committee hearings, but it is equally clear that the sweep of the statute can be no broader than the source of its authority—that of the attorney general—whose duties are to protect public rights in the interest of the state. Conversely, it is not the responsibility of the attorney general to protect private or

---

**3.** Even if Transclean had sought attorney's fees under Section 1117, we would not find this aspect of Transclean's case to be "exceptional," as the Jury expressly found that any false advertising, on Bridgewood's part, was not willful, and because the unique circumstances of this claim, which we subsequently detail in the text of this Order, do not commend any finding of exceptionality.

individual interests independent of a public purpose.

\* \* \* \* \* \*

We find further support for our holding that public interest must be demonstrated to state a claim under the Private AG Statute based on our conclusion that the legislature could not have intended to sweep every private dispute based on fraud, and falling within the [Consumer Fraud Act], into a statute where attorneys fees and additional costs and expenses would be awarded, because to do so would substantially alter a fundamental principle of law deeply ingrained in our common law jurisprudence—that each party bears his own attorney fees in the absence of a statutory or contractual exception. \* \* \* We have for as long presumed that statutes are consistent with the common law, and if a statute abrogates the common law, the abrogation must be by express wording or necessary implication. \* \* \* We decline to construe legislative intent to abrogate the common law with regard to the attorney fees provision in the absence of a clear purpose to do so.

Based on these considerations we hold that the Private AG Statute applies only to those claimants who demonstrate that their cause of action benefits the public. We believe that this conclusion is consistent with the history and purpose of the office of the attorney general to prosecute misrepresentations involving only matters of public interest.

We continue in the view that Transclean's action, under the Private AG Statute, furthered a public purpose over and above Transclean's private interest—that is, its recoupment of money damages that Transclean recovered from the Jury. See, *Group Health Plan, Inc. v. Philip Morris Inc.*, 621 N.W.2d 2, 11, 12, 14 (2001) to state a viable claim under Section 325F.67, the plaintiff need not be a purchaser of the defendant's products; need only plead that the defendant engaged in conduct prohibited by the statutes and that the plaintiff was damaged thereby; and need also prove that there is some "legal nexus" between the injury and the defendants' wrongful conduct. As we have previously ruled, either expressly or by implication, Transclean has satisfied these elements of proof.

Notwithstanding Transclean's entitlement to damages, attorney's fees under the Private AG Statute are discretionary with the Trial Court. See, *Scott Fetzer Co. v. Williamson*, 101 F.3d 549, 556 (8th Cir. 1996); citing *Hutchinson Utils. Comm'n v. Curtiss–Wright Corp.*, 775 F.2d 231, 243 (8th Cir.1985). In exercising our discretion, we accept that the purpose of the Private AG Statute is "to prevent fraudulent representations and deceptive practices with regard to consumer products by offering an incentive for defrauded consumers to bring claims in lieu of the attorney general," and that, in enacting such a measure, it was the Legislature's intent to "eliminate financial barriers to the vindication of a plaintiff's rights \* \* \* and to provide an incentive for counsel to act as private attorney general." *Ly v. Nystrom*, supra at 311. Upon a proper showing, we would not hesitate to advance those legislative purposes, by an award of Transclean's investigatory and litigation expenses. See, e.g., *Love v. Amsler*, 441 N.W.2d 555, 560 (1989), pet. for rev. denied (Minn., August 15, 1989) (expert witness fees and transcript costs are authorized as "costs of investigation" under Section 8.31, Subdivision 3a).

Here, however, there are several factors which strongly weigh against an award of fees. First, as we noted in our prior Order:

At the close of all the evidence, we expressed some concern that, under an

action for false advertising, Bridgewood would be found liable for using the same, or similar representations, as Transclean has employed in the past. Ultimately, we considered this as a natural result of the parties' pleadings. Transclean asserted a false advertising claim, while Bridgewood did not. While we remain unpersuaded that there is a distinction between Bridgewood's 100% replacement representations, and Transclean's advertisements which claim "all" or a "total" replacement of transmission fluid, the distinction goes nowhere, as Bridgewood did not prosecute a false advertising claim against Transclean.

*Order of January 8, 2001,* at p. 63.

We went on to note the following:

> While the Jury could regard the parties' representations as indistinguishable and, therefore, conclude that Transclean could not have sustained any damage from Bridgewood's advertising, which was not appreciably different from Transclean's, the Jury could also find that Bridgewood's advertising was false. Indisputably, the Jury could not find that Transclean also falsely advertised to Bridgewood's detriment. The issue presented to the Jury was not one of comparable fault.

*Id.* at 63–64.

Although, no doubt, some public interest is furthered by the elimination of advertising which claims that 100% of transmission fluid is replaced by Bridgewood's device, when less than that percentage can be accomplished, we see dubious public benefit in facilitating, through an award of fees, a competitor to aggressively seek such "truth-in-advertising" when, in fact, the competitor employs advertising jargon which is not meaningfully distinguishable. As a pure matter of equity, we see no "clean hands" here—Transclean chides Bridgewood for employing the term 100%, while Transclean employs the indistinguishable qualifier of "total," even though, as a pure matter of mechanical science, neither device could effectively replace every molecule of transmission fluid.

More important to the issue of attorney's fees is the fact that Transclean did not seek to prevent Century—the company which purchased the assets of Bridgewood, and agreed to pay Transclean a royalty so as to sell Bridgewood's infringing product—from continuing the same false advertising that Bridgewood had employed.[4] Apparently, the public interest was not sufficient to eradicate a false advertising campaign which, now, inures to Transclean's benefit. Given these circumstances, which are unique to this case, we find that an award of attorney's fees, on Transclean's false advertising claim, to be unwarranted and, as a matter of sound discretion, we decline to award any fees or costs in that regard.[5] See, e.g., *Untiedt v. Grand Laboratories, Inc.,* 1994 WL 714308

---

4. Among other evidence admitted at Trial, Robert Gey ("Gey"), who negotiated with Bridgewood for the purchase of its assets, and negotiated with Transclean so as to secure a license, in exchange for a royalty, in order to sell Bridgewood's product without infringing Transclean's patent, testified that Century repurchased the same advertising materials and brochures, which Transclean found objectionable when employed by Bridgewood, but without any informal protest, or formal lawsuit, from Transclean. Whatever may have been the public interest in driving Bridgewood's advertising from the marketplace dissolved when Transclean became the benefactor of such advertising.

5. We suspect that Bridgewood could argue that the same conflicted showing, as to Transclean's furtherance of any public purpose in suing Bridgewood for false advertising, should warrant the entry of Judgment as a matter of law, against Transclean, on that issue. Even if we had so concluded—and the issue we here address was not raised by either party, either now or during the course of the Trial, the Jury Verdict would have been no different, as the Jury was also asked to deter-

at *3 (Minn.App.1994), pet. for rev. denied (Minn., March 1, 1995) ("In awarding attorney fees under the private attorney general statute, a court must consider the purposes underlying the statute."); *Liess v. Lindemyer*, 354 N.W.2d 556, 558 (Minn. App.1984) ("[A]n award must take into account the degree to which the public interest is advanced by the suit," "[o]therwise, 'every artful counsel could dress up his dog bite case' to come under an attorney's fees statute."), quoting *Boland v. City of Rapid City*, 315 N.W.2d 496, 503 (1982); *Wexler v. Brothers Entertainment Group*, 457 N.W.2d 218, 222–23 (1990) ("When awarding attorney fees under the private attorney general statute, the trial court must consider the public interest policies underlying the statute."); *Martin v. Hancock*, 466 F.Supp. 454, 456 (1979) ("[T]he 'private attorney general' concept * * * is based on the rationale that counsel fees should be awarded by the court when the legal services have provided a benefit to a class of persons, not just a particular litigant."); *Cooperman v. R.G. Barry Corp.*, 775 F.Supp. 1211, 1214 (1991).

b. *Transclean's Defense to Bridgewood's Inequitable Conduct Claim.*

Transclean seeks an award of $50,202.25, in fees and costs, owing to its

defense against Bridgewood's inequitable conduct claim.[6] This amount includes fees attributable to Transclean's response to Bridgewood's discovery concerning this claim; Transclean's response to Bridgewood's Motion for Summary Judgment as well as Transclean's cross-Motion for Summary Judgment; preparation for Trial; the submission of post-Trial briefs; and the effort expended in presenting, and documenting, its fee request. In response to this request for fees and costs, Bridgewood does not challenge Transclean's itemization of $6,470.25 in costs and expenses that Transclean incurred in defending against Bridgewood's inequitable conduct claim, nor does it contest Transclean's itemization of $47.50, for reviewing the inequitable conduct Counterclaim; and $9,078.00 in fees related to "post-trial briefs on the issue of inequitable conduct," but it does contest the remainder of Transclean's fee request.

Not surprisingly, the time entries of Transclean's attorneys, as they were originally recorded, were not narrowed specifically so as to allow a pinpointing of those hours of legal effort which were solely attributable to the inequitable conduct issue. As a practical result of real world billing practices, an attorney will normally

---

mine whether Bridgewood engaged in false advertising under Federal law, which is not governed by the Private AG Statute, and the Jury returned an award of damages on that claim as well. Therefore, any such contention is moot.

Moreover, Transclean was only seeking damages during the period in which Bridgewood was responsible for the advertising and, as we find in the text of this Order, during that period of time a public purpose was served in eliminating advertising found to be false. As recognized by the discretionary standard that applies to fees and costs under the Private AG Statute, however, different considerations influence our ascertainment of a reasonable fee award. *Scott Fetzer Co. v. Williamson*, 101 F.3d 549, 556 (8th Cir.1996);

citing *Hutchinson Utils. Comm'n v. Curtiss–Wright Corp.*, 775 F.2d 231, 243 (8th Cir. 1985). The Jury awarded Transclean its reasonable damages owing to Bridgewood's false advertising but, in view of the unique circumstances here, we conclude that the Jury's Verdict on that issue, should not be further enhanced by a fee award.

6. For reasons not clear, Bridgewood does not appear to have filed its "Opening Brief on Inequitable Conduct," or its "Reply Brief in Support of a Finding of Unenforceability Due to Inequitable Conduct" Brief with the Clerk of Court. We take this means of directing the Clerk of Court to docket copies of these briefs, obtained from our work files, so as to complete the official Record of the Court.

bill his or her time for the entire scope of a given legal task, and will not bill according to the component elements of that task. As but one example, when an attorney prepares a Memorandum in support of Summary Judgment on three separate claims, his or her time will, ordinarily, be recorded as relating to the preparation of the Memorandum, and will not be subdivided according to the separate issues being briefed. As a consequence, we are obliged to review the general time entries of Transclean's attorneys, in order to independently determine whether counsel's allocation of a general time entry, to an inequitable conduct question, had a reasonable basis.

 On repeated occasion, our Court of Appeals has suggested that, when a Court faces, as do we here, an imprecise recitation of attorney's fees, the Court should consider directing the requesting party "to submit additional records before deciding to reduce the lodestar for inadequate documentation." *H.J. Inc. v. Flygt Corp.,* supra at 260. Here, with regularity, "counsel's billing records" included numerous entries such as "legal research" or "trial prep" or "met w/client." *Id.* Here, however, a recommittal is unnecessary as Transclean's counsel has allocated a generic time entry to the portion of that entry which relates to the inequitable conduct claims. As a result, we have closely reviewed each time entry of Transclean's attorneys, in the context of our thirty-plus years of involvement in complex litigation, in determining whether Transclean has a reasonable basis for its fee request.

Remaining at issue are Transclean's request that it be awarded attorney fees, in the amount of $9,780.00, for the preparation of its witnesses with respect to the inequitable conduct defense, and $11,258.00 for its effort to obtain Summary Judgment on the inequitable conduct issue, and to defend against Bridgewood's Mo-

tion for Summary Judgment on the same claim. In addition, Bridgewood contests Transclean's claim for $13,568.00 in attorney fees, in preparing for Trial on the inequitable conduct claim. We address each of these specific fee requests in turn.

In opposition to the request for pretrial preparation expenses, Bridgewood merely asserts, with a conclusory tone, that Transclean should not have incurred discovery costs, attributable to the depositions of Viken, and his attorneys, in addressing the inequitable conduct allegations. The assertion is naive, at best, and is, in any event, unsupported by the Record before us. Left unprepared, Transclean's witnesses could have inadvertently promoted Bridgewood's defense, by not being sufficiently informed on the applicable facts, as well as the governing law. As we have previously made clear, Bridgewood's inequitable conduct defense had no reason to be, and we find unavailing Bridgewood's insistence that, notwithstanding its staunch prosecution of that claim, Transclean should have resolved to treat the claim with indifference. Finding no overstatement in this aspect of Transclean's fee request, we grant the same.

We first encountered the inequitable conduct issues on the parties' cross-Motions for Summary Judgment. At that time, Transclean was arguing that Bridgewood's evidence was not sufficient, under a clear and convincing evidence standard, to allow a Jury to resolve Bridgewood's claim that Transclean had mislead the Patent Examiner. As originally briefed by Transclean, the entirety of its legal argument was expressed in two, typewritten pages. In response, Bridgewood presented approximately nine and one-half pages of argument, followed by Transclean's reply of six pages. We ultimately determined that, "[g]iving both parties the benefit of their most favorable version of the facts,

and the inferences which arise from those facts, we find Bridgewood's claim of inequitable conduct is properly for the Jury, and not resolvable by Summary Judgment." *Transclean Corp. v. Bridgewood Services, Inc.*, supra at 1091.

As to the Summary Judgment effort, Transclean requests an award of $11,258.00 in fees. Bridgewood mistakenly argues that "Transclean did not move for summary judgment on [the inequitable conduct] issue, it simply argued that material facts were in dispute." *Bridgewood's Objections to Transclean's Attorney Fee Accounting*, at p. 8. Not only did Transclean seek Summary Judgment on that issue, it also vigorously opposed Bridgewood's Motion for Summary Judgment as to the same claim. While it is true that the unenforceability issue, as framed by Bridgewood's inequitable conduct defense, was overshadowed by the other challenges that Bridgewood raised to the enforceability of Transclean's Patent, we cannot say that the allocation proposed by Transclean's counsel is either inaccurate, or an exaggerated valuation of the services that Transclean's counsel provided in that specific regard. The Summary Judgment issues required a thorough vetting of the discovery record, and a voluminous Declaration, replete with snippets from a variety of discovery depositions, was submitted in conjunction with the Motion. Given the Record presented, we find Transclean's attorney fee request, on this point, to be appropriate.

Next, Transclean requests attorneys' fees, in the amount of $13,568.00,[7] in preparing for Trial, and in presenting its witnesses on the inequitable conduct issue. Beyond such preparation, Transclean sought, by a Motion *in limine*, to preclude Bridgewood from presenting its inequitable conduct defense before the Jury—a Motion which was initially unsuccessful, but which, ultimately, we found persuasive.[8] Transclean estimates that, while not presented in a consolidated fashion, approximately one full Trial day was devoted to the inequitable conduct issues. We do not find this estimate to be in error, given our close auditing of the testimony at Trial. In view of the fact that, if successful, the inequitable conduct defense could have invalidated Transclean's Patent, and the additional fact that the defense was advanced for strategic reasons other than its legal merit, we find no cause to adjust Transclean's request on this aspect of its fee petition. Further, to the extent that Bridgewood urges that Transclean's fee request, on this claim, is inordinately high, we attribute any excess, above the metaphysical "norm," to Bridgewood's seemingly tireless effort to present its inequitable conduct claim as the most elusive of targets. As late as Bridgewood's post-Trial Memorandum on this issue, Bridgewood was improvising new theorizations of this claim, all of which we found to be makeweight, but which, given Bridgewood's past resort to a similar stratagem, surely caused Transclean to expend time, effort,

7. We would note that, by our tabulation, this figure should total $13,569.00, but we accept the figure proffered by Transclean.

8. Initially, we were convinced that the interests of witness convenience, as well as judicial efficiency counseled the presentation of the inequitable conduct defense to the Jury in an advisory capacity. As the Trial progressed, it became increasingly clear, that Bridgewood was attempting to employ its inequitable conduct defense as the vehicle to collaterally attack other pretrial rulings of this Court. In the end, we concluded that the further evidence on the inequitable conduct claim would be submitted to the Court, when the Jury was deliberating on the other claims presented on the Special Verdict form. Notably, neither party sought to introduce additional evidence on this claim, and we considered the parties' respective positions on the Record presented at Trial, and on their written legal arguments.

and money, in attempting to anticipate Bridgewood's next wave of novel recastings of the same claim. See, *Findings of Fact, Conclusions of Law and Order for Judgment of November 1, 2000*, at p. 3 n. 1.

Lastly, we grant one-half of Transclean's request for fees in preparing its fee request and, in this respect, we agree with Bridgewood, that, because we have disallowed Transclean's false advertising attorney's fees, Transclean should not be allowed to recover fees for preparing those billing records for our review. Accordingly, we grant Transclean fees in the amount of $45,531.50, for defending against Bridgewood's inequitable conduct defense, and in presenting its fee request, together with costs in the amount of $6,470.25, for a total award of fees and costs in the amount of $52,001.75.

 2. *Bridgewood's Motion for Attorney's Fees.* On November 12, 2000, we granted Bridgewood's Motion for Summary Judgment on Transclean's trademark infringement claims, as contained in Counts II and III of Transclean's Amended Complaint. *Transclean Corp. v. Bridgewood Services, Inc.,* supra at 1101. Subsequently, at Bridgewood's request, we ministerially entered Judgment on Bridgewood's successful Summary Judgment Motions, in our Order of January 8, 2001. *Order of January 8, 2001,* at p. 2, n. 2. In that same Order, we expressly provided:

> That Judgment be entered, in Bridgewood's favor, on Counts II and III of Transclean's Amended Complaint, **with each party bearing its own costs and expenses.**

[Emphasis supplied].

While framed as a Motion for Attorney's Fees, in reality, Bridgewood asks that we reconsider our prior Order, which determined that each party would bear its own costs and expenses as to the trademark infringement issues. In this District, we

dimly view Motions to Reconsider, and we have adopted a Local Rule on the subject that provides as follows:

> Motions to reconsider are prohibited except by express permission of the Court, which will be granted only upon a showing of compelling circumstances. Requests to make such a motion, and responses to such requests, shall be made by letter to the Court of no more than two pages in length, a copy of which must be sent to opposing counsel.

*D. Minn. LR7.1(g).*

Bridgewood has not attempted to comply with our Local Rules, and has not advanced any "compelling circumstances" which would commend a reconsideration. Nevertheless, in the interests of completeness, we overlook Bridgewood's noncompliance, and address the merits of its request for fees.

We granted Summary Judgment to Bridgewood, on Transclean's trademark infringement claims because Transclean failed to competently show that its "claimed marks were ever meaningfully affixed to the products whose origin they purport to identify." *Transclean Corp. v. Bridgewood Services, Inc.,* supra at 1094. While Transclean did present a conclusory affidavit on this issue, under governing authorities, we concluded that a "conclusory Affidavit on the ultimate issue of 'use,' standing alone, will not create a genuine issue of material fact that Transclean 'used' its marks in the manner necessary to earn common law trademark rights." *Id.,* citing *Rose–Maston v. NME Hospitals, Inc.,* 133 F.3d 1104, 1109 (8th Cir. 1998), and *Imperial Tobacco Ltd., Assignee of Imperial Group PLC v. Philip Morris, Inc.,* 899 F.2d 1575, 1581 (Fed.Cir. 1990). "As neither evidence of advertising, nor a conclusory affidavit, is sufficient evidence of commercial use of the Plaintiffs' trademarks in connection with the

sale of goods," we concluded that "Summary Judgment must be granted to Bridgewood on the Plaintiffs' Federal and State law trademark infringement claims." *Id.* at 1094–95.

 The law which governs [9] our analysis of Bridgewood's fee request has recently been summarized as follows:

> The Lanham Act permits the district court to award attorney's fees to the prevailing party in exceptional cases. 15 U.S.C. § 1117. When a plaintiff's case is groundless, unreasonable, vexatious, or pursued in bad faith, it is exceptional, and the district court may award attorney's fees to the defendant.

*Scott Fetzer Co. v. Williamson,* supra at 555, citing *Hartman v. Hallmark Cards, Inc.,* 833 F.2d 117, 123 (8th Cir.1987); see also, *Blue Dane Simmental Corp. v. American Simmental Assoc.,* 178 F.3d 1035, 1043 (8th Cir.1999).

Here, "there was some evidence in the record to support [Transclean's] claims," and therefore, "[Transclean's] case is not exceptional." *Id.* "Succinctly put, an exceptional case within the meaning of Section 35 is one in which the party's behavior went beyond the pale of acceptable conduct." *Aromatique, Inc. v. Gold Seal, Inc.,* 28 F.3d 863, 877 (8th Cir.1994).

Citing to *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 521, 525 n. 12, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994), and pointing to nothing more than our grant of Summary Judgment on the trademark infringement claim, Bridgewood argues that an "even-handed," "party-neutral" approach would entitle it to an award of attorney's fees. Of course, the Supreme Court intoned no rule in *Fogerty* that the Courts should do anything other than that which we do here—determine the legitimacy of an attorney fee request without regard for whether the request emanates from a plaintiff or a defendant. Absent from Bridgewood's request is any showing that Transclean's trademark infringement claim was "groundless, unreasonable, vexatious, or pursued in bad faith." *Hartman v. Hallmark Cards, Inc.,* supra at 123. Rather, we previously concluded that, on the Record presented, Transclean had failed to produce sufficient, competent proof of its "use" of the trademarks at issue, so as to create a genuine issue of material fact. Without more, such a failing is insufficient to demonstrate the sort of egregious misconduct that would warrant a determination that the issue was exceptional, so as to warrant a fee award. Accordingly, Bridgewood's Motion for Attorney's Fees is denied.

NOW, THEREFORE, It is—

ORDERED:

1. That the Clerk of Court is directed to docket Bridgewood's "Opening Brief on Inequitable Conduct," and its "Reply Brief in Support of a Finding of Unenforceability Due to Inequitable Conduct," which were not previously filed with the Court.

2. That Transclean's Request for an Award of Attorney's Fees having previously been granted, we award Transclean Attorney's Fees and Costs in the amount of $52,001.75.

3. That Bridgewood's Motion for Attorney's Fees [Docket No. 199] is DENIED.

4. That, consistent with the earlier Stay Order of this Court, the Clerk of Court is directed to enter final Judgment

---

**9.** In trademark infringement claims, "which are not unique to [the Federal Circuit's] jurisdiction," we apply, as does the Federal Circuit, "the law of the pertinent regional circuit," here the Eighth Circuit. *Al–Site Corp. v. VSI Intern., Inc.,* 174 F.3d 1308, 1326 (Fed. Cir.1999).

in the amount of $2,664,384.75, on February 21, 2001.