Nathaniel **SAXTON**, by and through his **Legal Representatives, Steven and Candace SAXTON, Petitioners–Appellees,**

v.

**SECRETARY OF the DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent–Appellant.**

No. 93–5007.

United States Court of Appeals, Federal Circuit.

Aug. 31, 1993.

Michael R. Skow, Law Offices of Rodney A. Klein, of Sacramento, CA, argued for petitioners-appellees. With him on the brief was Rodney A. Klein.

Patricia A. Millett, Atty., Dept. of Justice, of Washington, DC, argued for respondent-appellant. With her on the brief were Stuart M. Gerson, Asst. Atty. Gen. and Barbara C. Biddle, Atty.

Before NIES, Chief Judge, and ARCHER, and PLAGER, Circuit Judges.

PLAGER, Circuit Judge.

Appellant Secretary of the Department of Health and Human Services (HHS or government) appeals the Court of Federal Claims'[1] award of attorneys' fees in a vaccine case. *Saxton v. Secretary of Dep't Health & Human Servs.*, No. 90–2249V (Cl.Ct. Aug. 7, 1992) (*Saxton/CFC*). The Saxtons, petitioners-appellees, filed a petition for compensation that was later voluntarily withdrawn. The special master granted their attorneys' request for fees and costs but awarded only half the amount requested. On appeal, the Court of Federal Claims found the fee award to be arbitrary because the special master had relied on his prior experiences with these attorneys, and the court awarded the full amount requested. We reverse because the Court of Federal Claims committed legal error, and remand for entry of judgment in accordance with the special master's decision.

## BACKGROUND AND PROCEDURAL HISTORY

On October 1, 1990 attorneys Rodney A. Klein and Michael R. Skow filed a petition for compensation on behalf of Nathaniel Sax-ton under the provisions of the National Childhood Vaccine Injury Act (Vaccine Act).[2] October 1, 1990 was the statutory deadline for filing all cases related to vaccinations occurring before October 1, 1988. *See* 42 U.S.C. § 300aa–16(a)(1) (1988). The petition alleged that Nathaniel Saxton had suffered encephalopathy and seizures as a result of a DPT (diphtheria, pertussis, tetanus) vaccination on June 16, 1988.

After consulting two different medical experts, Klein and Skow filed a petition to dismiss the Saxtons' case on October 3, 1991. The experts declined to testify because the medical records could not support a conclusion of either table injury or causation.

On October 31, 1991 Klein and Skow applied for $10,832 in attorneys' fees and costs incurred during preparation of the case.[3] HHS objected to the award of fees, and Klein and Skow responded. Klein and Skow then requested an additional $2987.84 for responding to HHS' objections.[4]

On May 18, 1992 the special master awarded Klein and Skow $5982.48 under 42 U.S.C. § 300aa–15(e)(1), which authorizes the award of reasonable attorneys' fees and costs even when the petitioner does not prevail. All that is required is that the petition be brought in good faith and upon a reasonable basis. Although Klein and Skow voluntarily dismissed the petition for lack of proof, the special master found that they had brought the petition in good faith because they could not have fully evaluated the claim in October of 1990, during the rush to file claims before the impending statutory deadline.

The special master did not award the full amount requested; he reduced the attorneys' fees by about 50 percent. He found the number of hours billed overall to be unreasonable, and pointed to specific examples of

---

1. The Claims Court was renamed the Court of Federal Claims on October 29, 1992. Federal Courts Administration Act of 1992, Pub.L. No. 102–572, § 902(a), 106 Stat. 4506, 4516.

2. 42 U.S.C. §§ 300aa–10 to 300aa–34 (1988 & Supp. III 1991 & Supp. IV 1992).

3. This figure included $3530 for 17.65 hours of Klein's time at $200 per hour, and $5290 for

52.90 hours of Skow's time at $100 per hour (including 4.35 hours spent on preparing the application for attorneys fees and costs). The costs included copying costs and payment for the two experts' review of the medical records.

4. This figure was based on 9.4 hours of Klein's time and 10.35 hours of Skow's time.

overbilling. He also stated that, in his prior experience with these same attorneys, his impression was that "Messrs. Klein and Skow *typically* bill far more hours in Vaccine Program cases than other counsel, who, like Messrs. Klein and Skow, have handled multiple numbers of Program cases." *Saxton v. Secretary of Dep't Health & Human Servs.*, No. 90–2249V, slip op. at 3 (Cl.Ct. Spec. Mstr. May 18, 1992). The special master also found that, in his experience, Klein and Skow's additional hours did not produce a superior performance in comparison to the other vaccine program attorneys. *Id.* at 4.

To confirm his subjective impression, the special master surveyed every fee award made since the beginning of the vaccine program. He found that the five other law firms that handled multiple vaccine cases averaged 62.3 hours per case, while Klein and Skow averaged 143 hours per case—roughly twice as many hours. In the special master's opinion, reducing Klein and Skow's hours by 50 percent would still "provide a generous amount of time for a competent [Vaccine] Program attorney, in a typical Program case, to put together a Program petition, send the case to medical experts, and review and discuss such experts' responses, before electing to dismiss the case." *Id.* at 5.

Klein and Skow filed a motion for review with the Court of Federal Claims, and requested an additional $1000 in fees and costs incurred while preparing the motion for review. On August 7, 1991 the court vacated the special master's decision. It ruled that the special master's experience with counsel in the past was an irrelevant factor, and that his reliance on that factor rendered his entire decision arbitrary:

> Although a special master is not required to perform a line-by-line evaluation of the fee application, this is the preferred method. If a study of some sort is deemed necessary to describe the special master's general experience, it must be based on a comparison of the fee request at issue with other representative data. It is completely arbitrary to decide that some particular firm or attorney has had no billing judgment in past cases so that the firm or attorney's present fee application must

necessarily be inflated. Although the special master arguably relied on some relevant factors in reaching his decision, we conclude that his reliance on an irrelevant factor rendered arbitrary the entire decision concerning attorney fees.

*Saxton/CFC*, slip op. at 7.

The Court of Federal Claims awarded Klein and Skow the full amount of fees requested, finding the fee request to be reasonable because it "is documented and all of the items seem realistic." *Id.* at 7. The government appealed that decision to this court.

## DISCUSSION

■ On review of the judgment of the Court of Federal Claims, "[w]e may not disturb the judgment of the [court] unless we find that judgment to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Munn v. Secretary of Dep't Health & Human Servs.*, 970 F.2d 863, 870 (Fed.Cir.1992); *see also Phillips v. Secretary of Dep't Health & Human Servs.*, 988 F.2d 111, 112 (Fed.Cir.1993).

The issue before us is this: Was the Court of Federal Claims correct in holding that the special master erred in determining the fee award because he took into account his previous experiences with these attorneys in the vaccine program? We review this question *de novo* because it is a legal determination that a special master may not consider his prior experience with a vaccine program attorney and that attorney's history of overbilling. *See Munn*, 970 F.2d at 870 n. 10.

If we conclude that the court was correct in its analysis, then it properly set aside the special master's decision under the applicable statutory standard—arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law—and properly substituted its own findings and conclusions. *See* 42 U.S.C. § 300aa–12(e)(2)(B). At this point, we would review the Court of Federal Claims' new findings "under the same standard by which we review trial court fact findings in other contexts ... clearly erroneous." *Munn*, 970 F.2d at 871–72.

■ The government argues that the Court of Federal Claims, by specifying what

factors a special master may or may not consider, has encroached on the discretion given to the special master by statute to award fees and costs. *See* 42 U.S.C. § 300aa–15(e)(1). The statute authorizes "reasonable attorneys' fees and other costs." 42 U.S.C. § 300aa–15(e)(1). According to the government, determining what is 'reasonable' requires the special master to use his prior experiences to compare attorneys across cases. Such prior experiences are particularly relevant in the context of the vaccine program because a small group of attorneys repeatedly appears before the small group of special masters.

Klein and Skow argue that the court did not unduly interfere with the special master's discretion; it merely instructed special masters on how to properly apply their prior experience. Klein and Skow charge that the special master's fee award was arbitrary because he failed to perform an independent evaluation of the fee request—he merely relied on his uncontrolled 'study' of previous fee awards and his belief that Klein and Skow had inflated their fees in the past. His 50 percent reduction of the fees was made without explanation; according to Klein and Skow, decisions employing this 'meat-axe' technique should be subject to heightened scrutiny.

Because of the no-fault nature of the vaccine program, its simplified procedures, and its elimination of the need to prove fault or causation in every case, legal fees and costs in the vaccine program were not expected to be high:

> The Committee has assumed that costs under a no-fault, non-adversarial system will be significantly lower. With most evidentiary requirements specified in the legislation, with prohibitions on traditional discovery and courtroom procedure, and with no obligations to demonstrate negligence or product defectiveness, the costs of legal services will more closely approximate those incurred in such systems as the Black Lung benefits program or workers' compensation programs. In these systems, legal costs rarely rise above $10,000 per case. The Committee has, therefore, assumed that legal costs may be as much

as $15,000 per case in the compensation Program.

H.R. Report No. 908, 99th Cong., 2d Sess. 36, *reprinted in* 1986 C.C.A.N. at 6287, 6377–78; *cf. Zeagler v. Secretary of Dep't of Health & Human Servs.*, 19 Cl.Ct. 151, 153 (1989) ("A suit under the Act was meant to be, and is, a straightforward proposition. ... we do not think that suits under the statute can be viewed as litigation in the traditional sense.").

The section of the Vaccine Act which authorizes the award of attorneys' fees and costs provides that:

> In awarding compensation on a petition filed under section 300aa–11 of this title the special master or court shall also award as part of such compensation an amount to cover—
>
> (A) reasonable attorneys' fees, and
>
> (B) other costs,
>
> incurred in any proceeding on such petition. If the judgment of the United States [Court of Federal Claims] on such a petition does not award compensation, the special master or court may award an amount of compensation to cover petitioner's reasonable attorneys' fees and other costs incurred in any proceeding on such petition if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought.

42 U.S.C. § 300aa–15(e)(1).

■ If the petition for compensation is successful, the special master is required to award reasonable fees and costs. 42 U.S.C. § 300aa–15(e)(1). The determination of the amount of reasonable attorneys' fees is within the special master's discretion. *See Hines v. Secretary of Dep't Health & Human Servs.*, 22 Cl.Ct. 750, 753 (1991). If the petition for compensation is denied, the special master "may" award reasonable fees and costs if the petition was brought in good faith and upon a reasonable basis; the statute clearly gives him discretion over whether to make such an award. *See Perreira v. Secretary of Dep't Health & Human Servs.*, 27 Fed.Cl. 29, 31 (1992).

When a statute provides for recovery of reasonable attorneys' fees, the trial forum must determine what fee is 'reasonable.'

[A] reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.... The [trial forum] also should exclude from this initial fee calculation hours that were not "reasonably expended.".... Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. "In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority."

*Hensley v. Eckerhart,* 461 U.S. 424, 433–34, 103 S.Ct. 1933, 1939–40, 76 L.Ed.2d 40 (1983).

■ The trial forum "has discretion in determining the amount of a fee award. This is appropriate in view of the [trial forum's] superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." *Id.* at 437, 103 S.Ct. at 1941; *see also Commissioner, Immigration & Naturalization Serv. v. Jean,* 496 U.S. 154, 161, 110 S.Ct. 2316, 2320, 110 L.Ed.2d 134 (1990).

Trial courts routinely use their prior experience to reduce hourly rates and the number of hours claimed in attorney fee requests. *See Bernardi v. Yeutter,* 951 F.2d 971, 974 (9th Cir.1991) (district court's reduction of hourly rates and reduction of hours billed by one-half was not an abuse of discretion; "[t]he district court is in the best position to determine in the first instance the number of hours reasonably expended"); *Coulter v. State of Tennessee,* 805 F.2d 146, 150–52 (6th Cir.1986) (district court's reduction of hourly rates and reduction of hours billed was proper; "When the issue is a question of the lawyer's judgment in billing for a particular number of hours on a piece of work, we must depend in larger measure on the fairness of

the District Court ... we do not believe the District Court acted arbitrarily or irrationally in reducing the pretrial preparation hours from 62 to 31.").

■ Vaccine program special masters are also entitled to use their prior experience in reviewing fee applications. *See Farrar v. Secretary of Dep't Health & Human Servs.,* 1992 WL 336502, at *2–3, 1992 U.S.Cl.Ct. LEXIS 512, at *7–8 (Cl.Ct.Spec.Mstr. Nov. 2, 1992) (requested fees of $24,168.75 reduced to $4112.50); *Thompson v. Secretary of Dep't Health & Human Servs.,* No. 90–530V, 1991 WL 165686, at *2–3, 1991 U.S.Cl.Ct. LEXIS 401, at *9–10 (Cl.Ct.Spec.Mstr. Aug. 13, 1991) (requested fees of $18,039.75 reduced to $9000); *Wasson v. Secretary of Dep't Health & Human Servs.,* 24 Cl.Ct. 482, 483 (1991), *on remand,* No. 90–208V, 1992 WL 26662, 1992 U.S.Cl.Ct. LEXIS 42 (Cl.Ct. Spec.Mstr. Jan. 2, 1992), *aff'd,* No. 90–208V (Cl.Ct. Feb. 21, 1992), *aff'd,* No. 92–5101, 1993 WL 18492 (Fed.Cir. Jan. 29, 1993) (hourly rates reduced, and requested fees of $151,575 reduced to $16,500; special master disregarded the claim for 698.5 hours and estimated what, in her experience, would be a reasonable number of hours for a case of that difficulty).

■ Such fee determinations are within the discretion of a trial forum and are entitled to deference. *See Jean,* 496 U.S. at 161, 110 S.Ct. at 2320; *Hensley,* 461 U.S. at 437, 103 S.Ct. at 1941; *Delta–X Corp. v. Baker Hughes Prod. Tools, Inc.,* 984 F.2d 410, 414 (Fed.Cir.1993); *Hines,* 22 Cl.Ct. at 754 ("The special master is within his discretion in reducing hours that are duplicative, padded, spent on unrelated matters, or not 'reasonably expended.' ").

It was well within the special master's discretion to reduce the hours to a number that, in his experience and judgment, was reasonable for the work done. The Court of Federal Claims erred in prohibiting the special master from considering his past experiences with attorneys in the vaccine program—this past experience is a relevant factor and should be taken into account. *See Hensley,* 461 U.S. at 430 n. 3, 103 S.Ct. at 1937 n. 3 (awards in similar cases and coun-

sel's experience and ability are two of twelve factors relevant to a fee determination); *Slimfold Mfg. Co. v. Kinkead Indus., Inc.,* 932 F.2d 1453, 1459 (Fed.Cir.1991) (district court may rely on its prior experience and knowledge in determining reasonable hours and fees).

Since the special master's consideration of his past experiences was the only basis for the Court of Federal Claims' conclusion that the special master's decision was arbitrary, and since the court's determination on that issue was erroneous, we reverse its decision and remand for entry of judgment in accordance with the special master's decision.

#### Costs

Costs awarded to the government.

### *REVERSED and REMANDED.*