NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**QUINTON O. RIGGINS, JR.,**
*Petitioner-Appellant,*

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES,**
*Respondent-Appellee.*

---

2010-5078

---

Appeal from the United States Court of Federal Claims in case no. 99-VV-382, Judge Edward J. Damich.

---

Decided: January 4, 2011

---

CLIFFORD J. SHOEMAKER, Shoemaker & Associates, of Vienna, Virginia, argued for petitioner-appellant.

ANN D. MARTIN, Trial Attorney, Torts Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. With her on the brief were TONY WEST, Assistant Attorney General,

TIMOTHY P. GARREN, Director, MARK W. ROGERS, Deputy Director and CATHARINE E. REEVES, Assistant Director.

———————————

Before NEWMAN, BRYSON, and PROST, *Circuit Judges.*

PROST, *Circuit Judge.*

Appellant Quinton O. Riggins, Jr. ("Riggins") appeals the U.S. Court of Federal Claims' award of attorneys' fees and costs under the Vaccine Injury Compensation Program ("Vaccine Program"), established by the National Childhood Vaccine Injury Act ("Vaccine Act"). *Riggins v. Sec'y of Health & Human Servs.*, No. 99-382V (Ct. Cl. Dec. 10, 2009) ("*Court of Federal Claims' Opinion*"). We *affirm*.

## BACKGROUND

The hepatitis B vaccine was added to the Vaccine Injury Table on August 6, 1997, and the deadline for filing retrospective petitions alleging injuries resulting from the hepatitis B vaccine was August 6, 1999. 42 C.F.R. § 100.3(c)(2). On June 14, 1999, just prior to this deadline, Riggins filed a petition under the Vaccine Act alleging that he suffered an adverse reaction to the hepatitis B vaccine. Riggins's counsel filed approximately 150 Vaccine Act petitions alleging injuries from the hepatitis B vaccine.

As a result of the large number of petitions involving the hepatitis B vaccine filed at this time, the special masters, counsel for the Secretary of Health and Human Services, and counsel for petitioners made efforts to organize the hepatitis B petitions into injury categories and to coordinate a hepatitis B panel, an independent

panel of experts to assist in resolving these petitions. These efforts were abandoned by the spring of 2005. Riggins's petition then proceeded on an individual basis. On February 8, 2007, the Special Master issued a decision denying Riggins's petition.

On April 1, 2008, Riggins's counsel filed an Application for Attorneys' Fees and Costs, seeking $16,592.16 for work specifically on Riggins's petition and $204,619.18 for general work on the approximately 150 hepatitis B petitions litigated by Riggins's counsel. On June 15, 2009, the Special Master issued a decision awarding $16,547.16 for work specifically on Riggins's petition, nearly the full amount requested, and $79,782.81 for general work on hepatitis B petitions, less than half of the amount requested. *Riggins v. Sec'y of the Dep't of Health & Human Servs.*, No. 99-382V, slip op. at 2, 37 (Ct. Cl. Spec. Mstr. June 15, 2009) ("*Special Master's Decision*"). The main reductions in the general attorneys' fees and costs award related to the work of two consultants, Dr. Mark Geier ("Dr. Geier") and his son, David Geier (collectively, "the Geiers"), and international travel to France and/or Italy by these consultants and Riggins's counsel. *Id.* at 9-23.

Riggins filed a motion for review of the Special Master's decision in the Court of Federal Claims, challenging only the award for general work on hepatitis B petitions. *Court of Federal Claims' Opinion* at 1. On December 10, 2009, the Court of Federal Claims issued an opinion in which it concluded that the Special Master did not misapply the governing legal standards and that Riggins failed to establish that the Special Master abused his discretion in reducing the requested fees. *Id.* at 1-2, 10. Therefore, the Court of Federal Claims denied Riggins's motion for review and entered judgment consistent with the Special Master's attorneys' fees and costs award.

Riggins filed a timely notice of appeal to this court. Riggins again appeals only the award of $79,782.81 in attorneys' fees and costs for general work on hepatitis B petitions, not the award of $16,547.16 for work specifically on Riggins's petition. We have jurisdiction pursuant to 42 U.S.C. § 300aa-12(f).

## DISCUSSION

"Under the Vaccine Act, we review a decision of [a] special master under the same standard as the Court of Federal Claims and determine if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.'" *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1347 (Fed. Cir. 2008).

## A

Riggins argues that the Special Master, in reducing the requested attorneys' fees and costs, applied the wrong legal standard. Specifically, Riggins contends that the Special Master subjectively evaluated the reasonableness of the fees based on his prior experience and personal reaction to the incurred expenses. Riggins further asserts that the Special Master erred in failing to consider whether the award was sufficient to allow Riggins's counsel to effectively and fully present the claims.

The Vaccine Act requires a special master to award a successful Vaccine Act petitioner "reasonable attorneys' fees" and "other costs." 42 U.S.C. § 300aa-15(e)(1). If, however, a Vaccine Act petitioner is not successful, a special master may still award the petitioner "reasonable attorneys' fees and other costs" "if the special master . . . determines that the petition was brought in good faith and there was a reasonable basis for the claim." *Id.* "The

determination of the amount of reasonable attorneys' fees is within the special master's discretion." *Saxton v. Sec'y of the Dep't of Health & Human Servs.*, 3 F.3d 1517, 1520 (Fed. Cir. 1993).

We have "endorsed the use of the lodestar approach to determine what constitutes 'reasonable attorneys' fees' under the Vaccine Act." *Avera*, 515 F.3d at 1347. Under this approach, a court must "exclude . . . hours that were not 'reasonably expended.'" *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). Hours that are "excessive, redundant, or otherwise unnecessary" are not "reasonably expended." *Id.*; *see Marek v. Chesny*, 473 U.S. 1, 29 (1985) (Brennan, J., dissenting). The Supreme Court has created a guiding principle in determining whether hours are reasonable: "[h]ours that are not properly billed to one's client are not properly billed to one's adversary pursuant to statutory authority." *Hensley*, 461 U.S. at 434 (emphasis omitted).

Here, the Special Master thoroughly enumerated and carefully applied these controlling standards in a detailed and well-reasoned opinion. *See Special Master's Decision* at 5-9. Indeed, for each of the requested fees and costs, the Special Master evaluated whether a reasonable client would have found the expense justifiable as opposed to excessive, duplicative, or unnecessary. Further, to the extent Riggins objects to the Special Master's reliance on his twenty years of experience in the Vaccine Program in evaluating the fee request, we have made clear that "Vaccine [P]rogram special masters are . . . entitled to use their prior experience in reviewing fee applications," including experience with a particular attorney and that attorney's "history of overbilling." *Saxton*, 3 F.3d at 1519, 1521. Thus, Riggins has not shown a legal error in the Special Master's decision.

B

Riggins further argues that the circumstances surrounding this case show that the requested expenses were not excessive or unnecessary. Riggins emphasizes that the fees at issue on appeal are for general work on 150 hepatitis B petitions and argues that the request is de minimis when apportioned over this large number of cases. Riggins also stresses the heightened causation burden of *Stevens v. Secretary of the Department of Health and Human Services*, No. 99-594V, 2001 WL 387418 (Ct. Cl. Spec. Mstr. Mar. 30, 2001) and argues that, though this burden was subsequently overturned, it was in effect when the majority of the requested fees and costs were incurred.

Riggins is correct that the large number of petitions involved in this fee request and *Stevens*'s elevated burden of proof, in effect while much of the requested fees and costs were incurred, are relevant considerations regarding the reasonableness of the requested fees. Riggins, however, ignores that the Special Master's analysis considered that the requested expenses covered general work on 150 cases, finding this sufficient to justify some expenses yet insufficient to justify others. *See, e.g.*, *Special Master's Decision* at 9 ("The undersigned understands that [Riggins's counsel] argues it utilized the services of the Geiers in relation to general hepatitis B matters to prepare approximately 150 cases for prosecution, however, the undersigned finds this request grossly unreasonable for the multiple reasons described below."); *id.* at 27 ("[Riggins's counsel] had a large number of hepatitis-B claims, and thus it was necessary and appropriate for counsel to reach out to qualified medical experts to discuss these claims . . . ."). Moreover, the Special Master awarded substantial fees and costs for work of Riggins's

counsel, experts, and consultants that was directly related to the now-defunct *Stevens* burden, which required petitioners to establish "confirmation of medical plausibility from the medical community and literature" as well as an injury recognized by these sources. *Stevens*, 2001 WL 387418, at *23-25, *overruled by Althen v. Sec'y of the Dep't of Health & Human Servs.*, 58 Fed. Cl. 270 (Ct. Cl. 2003), *aff'd*, 418 F.3d 1274 (Fed. Cir. 2005). For example, the Special Master awarded attorneys' fees and costs for almost thirty hours of meetings between Riggins's counsel and various potential experts in addition to the work of two immunologists, Dr. Shoenfeld and Dr. Bellanti, in reviewing literature and preparing reports. *Id.* at 27, 31-32; *see* J.A.72-73. The Special Master also provided compensation for fifty hours of Dr. Geier's work for, among other things, performing "initial research regarding vaccine injuries resulting from [the] hepatitis B vaccine." *Special Master's Decision* at 15. Despite the difficulties facing Riggins's counsel, we cannot conclude that the Special Master acted arbitrarily or capriciously or abused his discretion in reducing the requested attorneys' fees and costs for general work on the hepatitis B petitions litigated by Riggins's counsel.

C

In addition to these general arguments, Riggins contends that the Special Master's reduction or denial of particular expenses was arbitrary, capricious, and an abuse of his discretion. Specifically, Riggins objects to the Special Master's reduction of the requested fees for his consultants, the Geiers. Riggins argues that the Special Master arbitrarily reduced the fees for Dr. Geier's services based solely on superficial, ad hominem attacks and defends Dr. Geier's work in this case as comparable to his work in other cases, which has been found to be reason-

able and compensable. Riggins also asserts that the Special Master erred in refusing to award fees for the work of David Geier, arguing that he did not duplicate the effort of Dr. Geier and that he is qualified to work as a consultant, having published articles on the hepatitis B vaccine. Oral Arg. at 9:28-10:20, *available at* http://oralarguments.cafc.uscourts.gov/mp3/2010-5078.mp3.

Riggins sought $97,443.43 in fees and costs associated with the consulting work of the Geiers. *Special Master's Decision* at 9. The Special Master, however, denied fees for David Geier's work and awarded only $10,000 for Dr. Geier's work. *Id.* at 10-17. The Special Master found that a hypothetical client would find David Geier's $37,543.75 fee to be unjustifiable for a number of reasons, including that even if David Geier were qualified to be a consultant, the work he performed is duplicative of that performed by Dr. Geier. *Id.* at 10-11 (emphasis omitted). As to Dr. Geier, the Special Master concluded that, though Dr. Geier was retained as a consultant in this case, the extensive role he played went well beyond that of a consultant and was more akin to the role of an expert, which he was not qualified to perform. *Id.* at 11-15. The Special Master determined that it was reasonable for Riggins's counsel to have Dr. Geier perform the limited role of a consultant, specifically reviewing the claims to identify medical issues, performing initial research as to injuries resulting from the hepatitis B vaccine, and helping counsel identify the type of experts required. *Id.* at 15-16. The Special Master found $10,000, or fifty hours of work at Dr. Geier's $200 billing rate, to be an appropriate and reasonable amount of compensation for such work. *Id.* at 16, 21.

The Special Master's reduction in the fees awarded for the work of Dr. Geier and refusal to award fees for David

Geier was not arbitrary, capricious, or an abuse of discretion. Riggins's emphasis on the award of consulting fees for Dr. Geier's work in *Ray v. Secretary of the Department of Health and Human Services*, No. 04-184V, 2006 WL 1006587 (Ct. Cl. Spec. Mstr. Mar. 30, 2006), is misplaced. Though Dr. Geier has, in *Ray* and other cases, been awarded modest consulting fees for minimal preliminary case preparation, this does not justify the excessive hours billed in this case. *Cf. Lamar v. Sec'y of the Dep't of Health & Human Servs.*, No. 99-584V, 2008 WL 3845157, at *15 (Ct. Cl. Spec. Mstr. July 30, 2008) (approving compensation for four hours of Dr. Geier's consulting work on two cases despite the "frequent criticism of Dr. Geier's testimony in Vaccine Act and other civil cases," because the hours expended were "modest"); *Ray*, 2006 WL 1006587, at *12 (finding 6.25 hours of consulting work by Dr. Geier in which he performed research and reviewed the case to be reasonable and compensable because it was a "cost-effective means of evaluating the case prior to full-blown litigation"). In contrast, in this case, Dr. Geier billed approximately $60,000, spending almost fifty hours reviewing literature and approximately seventy-five hours in meetings with Riggins's counsel and potential experts. *See Special Master's Decision* at 9-10, 17. Dr. Geier far exceeded the role of a consultant in assisting with initial case evaluation and research while leaving more extensive medical research and case review for a medical expert. The Special Master did not act arbitrarily or capriciously or abuse his discretion in reducing the fees awarded for Dr. Geier's work to $10,000, an amount he found to be reasonable for a consultant's preliminary review and initial research of the issues presented in hepatitis B petitions.

D

Riggins also objects to the Special Master's refusal to award costs for trips to Paris, France and Sorrento, Italy, arguing that these trips were justified because they allowed Riggins's counsel and the Geiers to meet with foreign experts in person, thereby overcoming the hurdle of a language barrier combined with technical complexities. Riggins stresses that France has more extensive data on the hepatitis B vaccine than the United States because, in the 1990s, France had a program to vaccinate all of its adult population with the hepatitis B vaccine, whereas the vaccine is not recommended for routine use in the United States. Further, Riggins's counsel represented that he made efforts to minimize his travel costs. *See* Oral Arg. at 34:45-36:15.

In August 2005, Riggins's counsel, Dr. Geier, and David Geier traveled to Paris, France to meet with several doctors and lawyers regarding the adverse consequences of the hepatitis B vaccine, accruing nearly $30,000 in fees and costs. *Special Master's Decision* at 18-20, 23. Further, in the winter of 2006, the Geiers spent $23,690.00 traveling to Sorrento, Italy to attend a conference at which the Geiers presented their research and spoke with experts and researchers. *Id.* at 18. The Special Master refused to award costs associated with these international trips, finding that a hypothetical client would not pay these expenses for personal consultations with foreign experts and lawyers, and for attendance at a professional conference that the Geiers were invited to attend as researchers. *Id.* at 18-24.

We agree with the Special Master's findings and conclude that the Special Master did not act arbitrarily or capriciously or abuse his discretion in declining to award

the nearly $45,000 in requested expenses for these trips.[1] Accepting that French and other foreign researchers had information relevant to the hepatitis B petitions, Riggins's vague arguments regarding language barriers and the scientific nature of the discussions are woefully insufficient to justify such costly international trips.

CONCLUSION

For the reasons set forth above, we affirm the Court of Federal Claims' award of attorneys' fees and costs under the Vaccine Program.

**AFFIRMED**

---

[1]    We further note that both the August 2005 trip to France and the winter 2006 trip to Italy took place after the heightened burden of *Stevens* was overturned by both the Court of Federal Claims and this court. *Althen,* 58 Fed. Cl. 270, *aff'd,* 418 F.3d 1274 (overruling *Stevens,* 2001 WL 387418). As such, an attempt to meet *Stevens*'s elevated burden is not a relevant justification for these international trips.