Erin SILVA, Petitioner,

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES,**
Respondent.

No. 10–101V

United States Court of Federal Claims.

Filed: December 11, 2012

Ronald Craig Homer, Conway, Homer & Chin–Caplan, P.C., for Petitioner.

Darryl R. Wishard, Civil Division, United States Department of Justice, for Respondent.

Vaccine Act; Attorneys' Fees; Reasonable Basis for Claim; HPV Vaccine; Transverse Myelitis v. Conversion Disorder

**OPINION AND ORDER**

HODGES, Judge.

Ms. Silva seeks attorneys' fees for work on a petition for which compensation was not awarded. The special master denied compensation for failure of proof, and then denied attorneys' fees because he found that the petition did not have a reasonable basis. The special master noted that no binding precedent guided his analysis of "reasonable basis," but denied attorneys' fees based on lack of support for the petition in the medical records. In his opinion, petitioner's lawyers spent too little time reviewing those records before filing the petition.

Petitioner appealed the denial of fees, arguing that the special master took a stricter view of the reasonable basis standard than is justified by case law developed pursuant to the Vaccine Act. Case law in the Federal Circuit does not address how courts should interpret the Vaccine Act's reasonable basis

standard, but the statute grants to the special master maximum discretion in applying the standard. For that reason, we reject petitioner's appeal.

## BACKGROUND

Petitioner alleged that the human papillomavirus, or HPV, vaccine caused her to suffer a neurological demyelinating injury.[1] HPV vaccine injuries are not included in the Vaccine Injury Table, so petitioner had to show causation-in-fact to receive compensation. *See* 42 U.S.C. § 300aa–11(c)(1)(C)(ii)(I).

Ms. Silva was fourteen years old when she received the HPV vaccine, first on January 11, and then on March 8, 2007. She sought treatment from her pediatrician numerous times for back pain and numbness in her legs, beginning in April of 2007. The pediatrician referred petitioner to a neurologist, who diagnosed Ms. Silva with transverse myelitis. He noted, however, that her "weakness in both lower extremities [and her] inability to walk appears to be secondary to depression."

Another neurologist, Dr. Niesen, conducted a thorough evaluation of Ms. Silva over a seven-day period at Cedars–Sinai Medical Center in June 2007. Dr. Niesen diagnosed petitioner with a conversion disorder that excluded transverse myelitis as a factor.[2] An October 2007 psychiatric evaluation ruled out conversion disorder and depression, but MRI studies of petitioner's spine in 2008 and 2009, were negative for transverse myelitis. Thus, petitioner's medical records contain diagnoses that could be considered conflicting on the question whether she suffered from transverse myelitis, a conversion disorder, or depression. Symptoms attributable to transverse myelitis might be compensable under the Vaccine Act, while similar physical limitations caused by a conversion disorder presumably would not be compensable. No doctor who examined Ms. Silva stated that she suffered from a vaccine-related injury.

The special master conducted a status conference in October 2010, wherein the parties agreed that the next step was to determine whether petitioner had a conversion disorder or a demyelinating condition. Petitioner agreed to file an expert report addressing this question. Later, petitioner's counsel notified the special master that he would not submit the expert report; he intended to withdraw as counsel of record in the case.[3]

The special master issued a decision denying compensation because of petitioner's failure to provide a medical opinion linking her injury to the allegedly harmful vaccine. The special master denied attorneys' fees and costs because petitioner did not demonstrate that her claim had a reasonable basis. Petitioner filed a motion for review of the fees decision.

## APPLICABLE VACCINE LAW

The Vaccine Act provides that the special master or court must award attorneys' fees and costs to petitioner if petitioner is awarded compensation on the merits. If a judgment entered by this court does not award compensation on the merits, the special master may nevertheless award fees and costs so long as the petition had a reasonable basis and it was brought in good faith.[4]

---

1. Demyelinating diseases result in damage to the protective covering of nerve fibers in the brain and spinal cord. Transverse myelitis (TM) is a demyelinating disease that causes inflammation of the spinal cord. *See Silva v. Sec'y of Health & Human Servs.*, No. 10–101V, 2012 WL 2890452, at *1 (Fed.Cl.Spec.Mstr. June 22, 2012).

2. Conversion disorders are characterized by symptoms that include loss or alteration of voluntary motor or sensory functioning suggesting physical illness and "having no demonstrable physiological basis." *Silva*, 2012 WL 2890452, at *2.

3. Petitioner does not appear to have hired new counsel. The same attorney represents Ms. Silva in this fees litigation.

4. (1) In awarding compensation on a petition filed under section 300aa–11 of this title the special master or court shall also award as part of such compensation an amount to cover—(A) reasonable attorneys' fees, and (B) other costs, incurred in any proceeding on such petition. If the judgment of the United States Court of Federal Claims on such a petition does not award compensation, the special master or court may award an amount of compensation to cover petitioner's reasonable attorneys' fees and other costs incurred in any proceeding on such petition

Ms. Silva's petition did not result in compensation on the merits, so she falls into the discretionary-award category for fees and costs provided for in Section B of the statute. According to Section B, the special master must make additional findings to justify awarding attorneys' fees. These findings are whether "the petition was brought in good faith and there was a reasonable basis for the claim." If the special master so determines, he or she *may* award the fees.[5]

## THE SPECIAL MASTER'S RULING

Ms. Silva was not entitled to an award of attorneys' fees because her claim did not have a reasonable basis. The special master reviewed the court's historic treatment of the "reasonable basis" standard, and noted the absence of guidance or precedent for interpreting the term from this court or from the Court of Appeals for the Federal Circuit. He turned to the special masters' own treatment of the term "reasonable basis" as it has related to attorneys' fees over the years.

According to the special master, medical records or a medical opinion was required to find a reasonable basis for the petition in the early years of the Vaccine Act. Cases filed later, however, often days or hours before various statutes of limitation expired, were evaluated by a more lenient standard. Special masters tended to construe the standards of reasonableness to support award of attorneys' fees even where cases failed on the merits, presumably as a matter of equity where statutory deadlines loomed.

The special master exhibited valuable research and knowledge of the Vaccine Act's history and application, though his rationale for denying fees in the case before us seems

indirect. The special master stated, "Ms. Silva's case, however, does not need to be resolved on such sweeping grounds.[6] It is sufficient to find that Ms. Silva's case lacked a reasonable basis because her attorneys did not act reasonably. The attorneys essentially did not investigate Ms. Silva's case properly before filing it." *Silva*, 2012 WL 2890452, at *13.

The special master concluded that Ms. Silva's case did not have a reasonable basis by examining whether her medical records supported the claim and whether her attorney's methods were adequate. He looked first at the substance of the medical records that petitioner's counsel possessed before filing the claim for Ms. Silva, and found that the records "cast doubt upon, rather than support, her claim." [7] *Id.* at *1. The special master focused on the inconclusive diagnosis of transverse myelitis (TM) when examining petitioner's medical records. He noted that petitioner's MRI studies were negative for transverse myelitis, which should have been a red flag for counsel.[8] No doctor stated that the HPV vaccine caused petitioner to suffer transverse myelitis.

Next, the special master determined that the attorneys' methods were "neither diligent nor adequate" because the attorneys spent very little time reviewing medical records before filing the petition. *Id.* The special master reviewed time sheets showing attorneys' efforts made before filing the petition and concluded that Ms. Silva's attorneys "did not act reasonably." *Id.* at *13. He noted that two attorneys spent less than one hour combined preparing the petition, and time sheets showed that no attorney spent any

---

*if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought.* 42 U.S.C. § 300aa–15(e)(1) (emphasis added).

5. As a result of this broadly discretionary language, a special master might make the required findings of good faith and reasonable basis in a no-compensation case, but reject the fee award.

6. It was not clear from the Opinion what "sweeping grounds" referred to among the special master's history of rulings related to reasonable basis.

7. Petitioner strongly disagrees that the medical records obtained by petitioner's counsel did not support the claim.

8. Petitioner insists that a positive MRI is not required for diagnosis of transverse myelitis, citing *Crosby v. Sec'y of Dep't of Health & Human Servs.*, No. 08–799V, 2012 WL 2866464, at *7 n. 12 (Fed.Cl.Spec.Mstr. June 20, 2012) (finding petitioner's diagnosis of TM to be accurate despite normal MRI testing).

time analyzing the medical records before filing the petition. The special master observed that before filing, "[a]lmost all the work had been performed by paralegals in collecting medical records." [9] *Id.* at *3.

The special master placed importance on the fact that Ms. Silva's attorneys ultimately decided not to proceed with the case. He reasoned, "[i]f Ms. Silva's attorneys had conducted this evaluation before they filed her petition, it is likely that the attorneys would have found that her case was lacking and would not have filed the petition without further inquiry into the diagnosis as well as causation, saving much time and effort." *Id.* at *14.

## ARGUMENTS

Petitioner argues that the special master's denial of attorneys' fees and costs in this case was an abuse of discretion. She contends that the special master's reasoning was flawed because her records did support a diagnosis of transverse myelitis. Vaccines have been found capable of causing TM, and for that reason, TM injuries have been found compensable in the past. While it is true that Dr. Niesen diagnosed petitioner with a conversion disorder, a psychiatric evaluation performed in October 2007, ruled out depression and conversion disorder.

Petitioner notes that her symptoms began about four weeks following her HPV vaccination, and no alternative cause of her symptoms was identified. Eight of her treating physicians made or affirmed a diagnosis of TM, and opinions of treating physicians are favored in the Vaccine Program. *Capizzano v. Sec'y of Health & Human Servs.*, 440 F.3d 1317, 1326 (Fed.Cir.2006). Petitioner argues that the clinical diagnoses of the treating physicians are sufficient to establish a rea-

sonable basis for counsel to assume that she suffered from TM.

Defendant responds that many of the eight records referenced by petitioner as transverse myelitis diagnoses were in fact relying on or simply restating the original TM diagnosis. In other words, petitioner cannot show eight independent diagnoses of TM in the medical records. The important diagnosis was that of Dr. Niesen, who did a thorough neurological work-up after the initial diagnosis by another neurologist, defendant notes. Dr. Niesen found that petitioner did not have TM. The special master placed greater importance on Dr. Niesen's diagnosis.

Petitioner defends counsel's limited efforts pre-filing, stating that the attorneys' methods were appropriate and in line with the intent of the Vaccine Act. She makes the following persuasive argument: "[T]o require petitioners to conduct extensive, expensive pre-filing investigations, including the costs associated with obtaining medical records, retaining medical expert witness[es] and paying attorneys' fees, is in direct opposition to the spirit of Congressional intent. This would drastically limit access to the Program to those petitioners with sufficient financial resources to conduct such an investigation." However, defendant does not agree that such a litany of research and other pre-claim activities are necessary. Instead, reasonable basis requires only a simple review of medical records already in the attorneys' possession to satisfy themselves that the claim is feasible before filing a petition, defendant contends.

Petitioner urges the court to consider the nature of cases in which courts have found no reasonable basis for a claim, as the special master did here. She cites a number of those cases to show that the facts are far different from this one.[10]

---

**9.** Petitioner responds that this law firm's management practices regarding the use of paralegals for preliminary research was complimented during the Omnibus Autism Proceedings.

**10.** Petitioner cites, for example, *Perreira v. Sec'y of Dep't of Health & Human Servs.*, 33 F.3d 1375 (Fed.Cir.1994) (attorneys' fees and costs denied where expert opinion was grounded in neither medical literature or studies); *Brown v. Sec'y of Dep't of Health & Human Servs.*, No. 99–593V,

2005 WL 1026713 (Fed.Cl.Spec.Mstr. Mar. 11, 2005) (no reasonable basis where petitioner presented only emails between petitioner and the law firm); *Turpin v. Sec'y of Health & Human Servs.*, No. 99–564V, 2005 WL 1026714 (Fed.Cl. Spec.Mstr. Feb. 10, 2005) (no reasonable basis where only one affidavit and no medical records were submitted); *Di Roma v. Sec'y of Health & Human Servs.*, No. 90–3277V, 1993 WL 496981 (Fed.Cl.Spec.Mstr. Nov. 18, 1993) (denying attor-

## DISCUSSION

 We review a special master's decision on attorney's fees for abuse of discretion. A special master's determination of attorneys' fees and costs is entitled to deference. *Saxton v. Sec'y of Dep't of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed.Cir. 1993); *Wasson v. Sec'y of Dep't of Health & Human Servs.*, 24 Cl.Ct. 482, 483 (1991). So long as the special master has "considered the relevant evidence of record, drawn plausible inferences, [and stated] a rational basis for the decision," reversible error is extremely difficult to establish. *Hines v. Sec'y of Dep't of Health & Human Servs.*, 940 F.2d 1518, 1528 (Fed.Cir.1991).

 A petitioner is not automatically entitled to attorneys' fees if the petition for compensation is denied. The Vaccine Act leaves the question to the special master's discretion. *See Saxton*, 3 F.3d at 1521. Special masters have interpreted this to mean that even if good faith and reasonable basis are present, a fee award is not mandatory. *See Di Roma v. Sec'y of Dep't of Health & Human Servs.*, No. 90–3277V, 1993 WL 496981, at *1 (Fed.Cl.Spec.Mstr. Nov. 18, 1993). However, the masters have never used their discretion to reject a fee award where a petition was made in good faith and with a reasonable basis. *Silva*, 2012 WL 2890452, at *9 n. 17.

 As the special master explained in his decision, the term 'reasonable basis' has been defined in various ways over the years. Our reading of the statute and the case law suggests that this court should not choose the correct interpretation, however. Special masters have broad discretion in awarding attorneys' fees where no compensation is awarded on the petition. Statutory language describing that discretion states that he or she "*may* award an amount of compensation . . . *if* the special master . . . determines that the petition was brought in good faith and there was a reasonable basis for the claim. . . ." 42 U.S.C. § 300aa–15 (e)(1)(B) (emphasis added). It is difficult to imagine a broader grant of authority and discretion in the circumstances. *See Saxton*, 3 F.3d at

1520 ("If the petition for compensation is denied, the special master 'may' award reasonable fees and costs if the petition was brought in good faith and upon a reasonable basis; the statute clearly gives him discretion over whether to make such an award.").

## CONCLUSION

We agree with defendant's arguments in response to petitioner's more persuasive objections to the special master's findings. For example the statute contemplates the sort of review prior to filing a claim that defendant highlighted: a simple review of available medical records to satisfy the attorneys that the claim is feasible. Defendant also explained the repeated references to transverse myelitis in Ms. Silva's medical records, showing that the references were not independent diagnoses but mere duplications of her initial diagnosis, an important part of her medical history.

It is true that the special master's rulings on the meaning and application of "reasonable basis" have varied over the years. The Federal Circuit has not issued binding precedent on the question. However, the appeals court has provided precedent on the collateral issue in this case—the breadth of a special master's discretion in deciding whether to award attorneys' fees to a petitioner who loses on the merits. *See Saxton*, 3 F.3d at 1521.

The special master considered the evidence of record at length, and stated rational bases for his conclusions. His ruling does not exceed the very broad discretion granted him by the Vaccine Act. The special master's determinations that petitioner's attorneys did not have a reasonable basis for her claim, that they did not investigate Ms. Silva's case properly before filing it, and that the attorneys did not act reasonably, are supported by the record. The special master's decision to deny attorneys' fees in this case is AFFIRMED.

neys' fees where petitioner could not prove re-

ceipt of a table vaccine).