Marilyn DAVIS, Petitioner,

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES,**
Respondent.

**No. 07–451V.**

United States Court of Federal Claims.

June 29, 2012.

Ronald C. Homer, Conway, Homer & Chin–Caplan, P.C., Boston, Massachusetts, for petitioner. Representing petitioner at the hearing was Meredith Daniels, Conway, Homer & Chin–Caplan, P.C., Boston, Massachusetts.

Darryl R. Wishard, Trial Attorney, Torts Branch, Civil Division, United States Department of Justice, Washington, D.C., for respondent. With him on the brief were Stuart F. Delery, Acting Assistant Attorney General, Civil Division, Rupa Bhattacharyya, Director, Torts Branch, Mark W. Rogers, Deputy Director, Torts Branch, and Catherine E. Reeves, Assistant Director, Torts Branch, Civil Division, United States Department of Justice, Washington, D.C.

## OPINION AND ORDER[1]

LETTOW, Judge.

Ms. Marilyn Davis seeks review of a decision entered by the special master on March 20, 2012, concerning attorneys' fees and costs in her vaccine case. Ms. Davis had presented a petition for compensation alleging that she developed neuromyelitis optica ("NMO") as a result of an influenza vaccination. The special master denied her claim for compensation, finding that she failed to provide a persuasive theory of how the vaccine could have triggered the onset of her NMO. Petitioner sought review in this court which affirmed the denial of entitlement to compensation, concluding that several errors in the proceedings before the special master were harmless. Ms. Davis then appealed to the Federal Circuit, which also affirmed.

After her defeat in the Federal Circuit, Ms. Davis asked the special master to award her attorneys' fees and costs pursuant to 42 U.S.C. § 300aa–15(e)(1). The special master made an award but declined to grant the bulk of the fees and costs that she sought. Specifically, he denied all fees and costs associated with her appeal to the Federal Circuit, ruling that the appeal lacked a reasonable basis. He also found that counsel spent an inordinate amount of time in handling the motion for review to this court and accordingly reduced the award for that work.

Ms. Davis requests that this court set aside the special master's decision as an abuse of his discretion and award her the amount she originally sought. The government opposes Ms. Davis's motion and asks the court to affirm the special master's decision.

1. In accord with the Rules of the Court of Federal Claims ("RCFC") App. B, Rule 18(b), this opinion and order is initially filed under seal. By rule, the parties are afforded fourteen days within which to propose redactions.

## BACKGROUND AND PROCEDURAL HISTORY

### A. The Special Master's Entitlement Decision

The background of this case has been described at length in a prior opinion. *See Davis v. Secretary of Health & Human Servs.* ("*Davis III*"), 94 Fed.Cl. 53, 58–61 (2010), *aff'd, Davis v. Secretary of Health & Human Servs.* ("*Davis IV*"), 420 Fed.Appx. 973 (Fed.Cir.2011) (per curiam) (Fed.Cir. R. 36). Briefly, Ms. Davis received an influenza vaccine in December of 2006. Within a month, she began exhibiting symptoms ranging from lower back pain to paraplegia. Her treating physician eventually diagnosed her with NMO,[2] but he was unable to discern its etiology. Ms. Davis filed a petition for compensation in June 2007. Although the government did not contest that Ms. Davis suffered from NMO, it challenged her assertion that the vaccine was the cause of this injury.

A hearing was held on September 15, 2009 before the special master. Dr. J. Griffith Steel testified on behalf of Ms. Davis. He opined that the influenza vaccine damaged the lining of the blood vessels, which permitted the protein aquaporin–4 to pass through the blood-brain barrier. Tr. 68:3–25, 121:5–20 (Sept. 15, 2009). This, in turn, triggered an immune response from the body which resulted in damage to the myelin. *See* Tr. 20:24 to 21:10, 22:19–25, 68:14–21 (Sept. 15, 2009). The government's expert, Dr. Arthur Safran, opinioned that no connection existed between Ms. Davis's vaccination and her NMO. He had found no medical literature discussing such a correlation, and he also pointed to alternative causes which he believed could better explain petitioner's NMO. *See* Tr. 137:3–8 (Sept. 15, 2009).

The special master rejected Dr. Steel's hypothesis, finding that "Ms. Davis has not established, by a preponderance of the evidence, the reliability of the assertion that the flu vaccine can damage" the lining of the blood vessels. *Davis v. Secretary of Health & Human Servs.* ("*Davis II*"), No. 07–451V, 2010 WL 1444056, at *8 (Fed.Cl.Spec.Mstr. Mar. 16, 2010), *aff'd*, 94 Fed.Cl. 53, *aff'd*, 420 Fed.Appx. 973. While Dr. Steel had referred to several medical articles relating to this subject, none of them directly supported the proposition that the influenza vaccine could damage blood vessels. *Id.* The special master concluded that Ms. Davis had failed to satisfy the first prong of *Althen* and so was not entitled to compensation. *Id.* at *15.[3]

### B. Ms. Davis's Motion for Review and Subsequent Appeal

Ms. Davis filed a motion for review with this court on April 15, 2010. She contended that the special master had applied too exacting a standard in assessing Dr. Steel's theory and that the evidentiary record supported finding that each of the *Althen* prongs for causation had been satisfied. *See* Pet'r's Mem. in Support of Mot. for Review of the Spec. Mstr.'s Decision at 15–20, Apr. 15, 2010, ECF No. 73. Among other things, she argued that the special master had raised her burden of proof by requiring that Dr. Steel's hypothesis be generally accepted in the medical community. *Id.* at 17–18. A hearing was held on May 26, 2010, during which Ms. Davis was represented by Ms. Sylvia Chin–Caplan and Ms. Christina M. Ciampolillo.

This court affirmed the special master's decision in an opinion issued July 12, 2010. *See Davis III*, 94 Fed.Cl. 53.[4] The court

---

**2.** NMO is the "demyelination of the optic nerve and spinal cord; it is marked by diminution of vision and possibly blindness, flaccid paralysis of the extremities, and sensory and genitourinary disturbances." *Dorland's Illustrated Medical Dictionary* 1267 (32nd ed. 2012). Demyelination is the "destruction, removal, or loss of the myelin sheath of a nerve or nerves." *Id.* at 486.

**3.** Under *Althen*, to demonstrate causation-in-fact a petitioner must "show by preponderant evidence that the vaccination brought about her injury by providing: (1) a medical theory causal-

ly connecting the vaccination and the injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing of a proximate temporal relationship between vaccination and injury." *Althen v. Secretary of Health & Human Servs.*, 418 F.3d 1274, 1278 (Fed.Cir.2005).

**4.** The court held that the special master acted improperly by considering evidence outside the record, but found that this error was harmless. *Davis III*, 94 Fed.Cl. at 66.

concluded that the special master had "relied on the dearth of medical literature supportive or dismissive of Dr. Steel's hypothesis to bolster his conclusion that Ms. Davis had not met her burden under *Althen*." *Id.* at 68. The court was unwilling to discount Dr. Steel's theory, but it nonetheless upheld the special master's determination on the ground that "medical science has not yet advanced sufficiently far to conclude that [Dr. Steel's] conceptual approach to causation can now be said to be established by a preponderance of the evidence." *Id.*

Petitioner appealed from this judgment to the Court of Appeals for the Federal Circuit. In her brief, she focused particularly on prong one of *Althen* and claimed that she had satisfied the requirements of that prong by providing (1) "a biologically plausible mechanism," (2) "circumstantial evidence contained in the medical records," and (3) "case reports and supporting statements in the scientific literature." Brief for Petitioner–Appellant ("Appellant's Br.") at 31, *Davis IV*, 420 Fed.Appx. 973. Ms. Davis averred that this court "requir[ed] literature directly supportive of Dr. Steel's theory" and thus "elevated the standard of proof to an unattainable level." *Id.* at 21.

The Court of Appeals summarily affirmed this court's decision, citing Fed. Cir. R. 36.[5] *Davis IV*, 420 Fed.Appx. 973. The clerk of the Federal Circuit entered judgment against Ms. Davis and taxed the government's costs to her under Fed. R.App. 39.[6] *See* Notice of Entry of Judgment, May 12, 2011, ECF No. 82.

### C. The Special Master's Decision on Attorney's Fees and Costs

After the Federal Circuit affirmed the denial of entitlement, Ms. Davis moved to the last stage of the litigation, namely, attorneys' fees and costs. Under the Vaccine Act, even if a petitioner does not obtain compensation for her injury, a special master may grant her attorneys' fees and costs if he "determines that the petition was brought in good faith and there was a reasonable basis for the claim." 42 U.S.C. § 300aa–15(e)(1). Ms. Davis had already received an award of interim attorneys' fees and costs for the expenses she incurred in presenting her original petition before the special master. *See Davis v. Secretary of Health & Human Servs.*, No. 07–451V, 2010 WL 1252737 (Fed. Cl.Spec.Mstr. Mar. 10, 2010) (*"Davis I"*). She sought an additional $76,189.79 to pay for the attorneys' fees and costs involved in (1) her motion for review before this court, (2) her appeal to the Federal Circuit, and (3) her fee request to the special master. *See* Pet'r's Appl. for Final Att'ys' Fees & Costs, Oct. 24, 2011, ECF No. 84; Pet'r's Supplemental Appl. for Final Att'ys' Fees, Nov. 17, 2011, ECF No. 89; Pet'r's Second Supplemental Appl. for Final Att'ys' Fees, Jan. 27, 2012, ECF No. 94; *see also Davis v. Secretary of Health & Human Servs.*, No. 07–451V, 2012 WL 1357501, at *5 (Fed.Cl. Spec.Mstr. Mar. 20, 2012) (*"Davis V"*). The government opposed her requested award of fees on two main grounds. *See* Resp't's Opp'n to Pet'r's Final Appl. for Att'ys' Fees & Costs, Nov. 3, 2011, ECF No. 86. First, it claimed that the number of hours was excessive and unreasonable. *Id.* at 1–2. Second, it argued that Ms. Davis did not have a reasonable basis for appealing her case to the Federal Circuit. *Id.* at 5.

The special master awarded Ms. Davis $20,679.00, less than thirty percent of the amount she had requested. *See Davis V*, 2012 WL 1357501, at *16. He stated four reasons for significantly reducing the fees awarded to Ms. Davis. First, he found that the time spent drafting the motion for review (45 hours) was unwarranted since only seven pages of the document were "new work." *Id.*

---

5. In pertinent part, that rule provides:
 The court may enter a judgment of affirmance without opinion, citing this rule, when it determines that any of the following conditions exist and an opinion would have no precedential value:
 (a) the judgment, decision, or order of the trial court appealed from is based on findings that are not clearly erroneous; [or]

 . . .
 (e) a judgment or decision has been entered without an error of law.
 Fed. Cir. R. 36.

6. Fed. R.App. P. 39(a)(2) provides that "if a judgment is affirmed, costs are taxed against the appellant."

at *5–6. Second, he regarded the time spent by the lead attorney in preparing for oral argument as slightly excessive. *Id.* at *6. Third, he determined that, given the relative simplicity of the case, there was no need for a second attorney to be present at oral argument before this court. *Id.* at *6–8. Fourth, and most significantly, the special master denied all fees and costs attributable to the appeal to the Federal Circuit. *Id.* at *11–14. He decided that Ms. Davis's appeal lacked a reasonable basis, and thus she was not entitled to recover her fees and expenses for the appeal under 42 U.S.C. § 300aa–15(e). In explaining his rationale for this finding, the special master emphasized petitioner's failure to cite in her appellate brief *Moberly ex rel. Moberly v. Secretary of Health & Human Servs.*, 592 F.3d 1315 (Fed.Cir.2010), a decision bearing on the evidence required to show a biological mechanism for injury. *See Davis V*, 2012 WL 1357501, at *1–3, *11–12. The special master regarded *Moberly* as essentially foreclosing Ms. Davis's argument on appeal. *Id.* at *11. The only way for petitioner's challenge to escape from *Moberly*'s holding, he reasoned, would be if she could distinguish her circumstances from the facts of that case. *See id.* Because Ms. Davis never cited *Moberly* in her brief to the Federal Circuit, despite repeated references to it by the special master, this court, and the government, *see id.*,[7] in the special master's view, "Ms. Davis did not present a tenable argument in her appeal," *id.*

Apart from Ms. Davis's failure to address *Moberly* in her appellate briefing, the special master based his finding on three other considerations. *See Davis V*, 2012 WL 1357501, at *12 n. 7. First, the government had warned Ms. Davis that it might contest her claim for attorneys' fees because of her neglect of *Moberly*. *See id.* at *3 (quoting Appellee's Br. at 7 n.4); *see also id.* at *2 (quoting Resp't's Resp. to Pet'r's Mot. for Review, May 17, 2010, ECF No. 76, at 3 n.4).

Second, the costs of the appeal were taxed to petitioner. *Id.* at *12 n. 7. And third, the Federal Circuit had affirmed this court's decision without an opinion, per Fed. Cir. R. 36. *Id.* at *12.

Prescient that this court might be asked to review his decision, the special master provided an alternative holding of what petitioner's reasonable attorneys' fees would have been for the appeal. *Davis V*, 2012 WL 1357501, at *14. In terms of brief writing, he noted that significant portions of Ms. Davis's appellate briefs were virtually identical to the law firm's prior submissions. *Id.* at *14–15. The special master found it difficult to determine a reasonable fee for the "new work" due to the "limited amount of information provided in the attorneys' timesheets." *Id.* at *14. Nonetheless, he concluded that a reasonable amount of fees for counsel's work at the Federal Circuit would be $27,606.65, *id.* at *15, encompassing fees not only for her lawyers' brief writing, but also for time spent "on matters preliminary to writing the initial brief, on developing the joint appendix with the Secretary['s counsel], on presenting supplemental authority, on preparing for oral argument, and on concluding the case after the Federal Circuit's opinion." *Id.*

The special master's alternative holding did not include any award of Ms. Davis's costs incurred in pursuing her appeal before the Federal Circuit. *Davis V*, 2012 WL 1357501, at *16. Noting that the Federal Circuit's entry of judgment had taxed costs to petitioner, the special master reasoned that "an award of costs to Ms. Davis … would undermine (if not directly contradict) the Federal Circuit's order." *Id.*

On April 19, 2012, Ms. Davis filed a motion for review of the fee decision, contesting the special master's reductions. The government has urged the court to affirm the special master's award of attorney's fees as a

---

7. Both the special master and this court cited *Moberly* in their opinions on Ms. Davis's petition for entitlement and her motion for review, respectively. *See Davis II*, 2010 WL 1444056, at *6–7, *9, *13–14; *Davis III*, 94 Fed.Cl. at 63–64, 67. The government discussed *Moberly* at length in its briefs before the special master, this court, and the Federal Circuit. *See, e.g.*, Resp't's Resp. to Pet'r's Mot. for Review, May 17, 2010, ECF No. 76, at 3 n.4; Brief for Respondent–Appellee, ("Appellee's Br.") at 7 n.4, *Davis IV*, 420 Fed. Appx. 973; Oral argument at 5:17 to 10:01, *Davis IV*, 420 Fed.Appx. 973 (No. 2010–5159), *available at* http://www.cafc.uscourts.gov/oral-argument–recordings/2010–5159/all ("*Davis IV* Oral Argument").

reasonable exercise of his discretion. The court held a hearing on petitioner's motion for review on June 7, 2012, and the case is now ready for disposition.

## STANDARD OF REVIEW

■ The Vaccine Act authorizes this court to review decisions by special masters in vaccine cases and to "set aside any findings of fact or conclusion of law of the special master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 42 U.S.C. § 300aa–12(e)(2)(B). The precise standard to be applied varies depending on the nature of the decision under review. "Fact findings are reviewed … under the arbitrary and capricious standard; legal questions under the 'not in accordance with law' standard; and discretionary rulings under the abuse of discretion standard." *Caves v. Secretary of Dep't of Health & Human Servs.*, 100 Fed. Cl. 119, 131 (2011) (omission in original) (quoting *Munn v. Secretary of Health & Human Servs.*, 970 F.2d 863, 870 n. 10 (Fed. Cir.1992)), *aff'd*, 463 Fed.Appx. 932 (Fed.Cir. 2012) (per curiam) (Fed.Cir. R. 36); *see also Hazlehurst v. Secretary of Health & Human Servs.*, 604 F.3d 1343, 1348–49 (Fed.Cir. 2010).

Here, Ms. Davis specifically challenges the special master's determinations that (1) she lacked a reasonable basis for her appeal to the Federal Circuit and (2) the number of hours billed was unreasonable. Both of these findings are matters entrusted to the discretion of the special master. *See McKellar v. Secretary of Health & Human Servs.*, 101 Fed.Cl. 297, 305 (2011) ("[W]e are normally obliged to defer to the special master's discretionary findings that there was a reasonable basis behind the petition." (citing *Saxton ex rel. Saxton v. Secretary of Health & Human Servs.*, 3 F.3d 1517, 1520 (Fed.Cir. 1993))); *Hall v. Secretary of Health & Human Servs.*, 640 F.3d 1351, 1356 (Fed.Cir. 2011) ("The determination of the amount of reasonable attorneys' fees is within the special master's discretion." (quoting *Saxton*, 3 F.3d at 1520)). To prevail, Ms. Davis must show that the special master abused his discretion in making these determinations.

■ According to the general standards set out by the Federal Circuit in other contexts, this court will find an abuse of discretion only where the special master's decision "(1) is clearly unreasonable, arbitrary, or fanciful; (2) is based on an erroneous conclusion of law; (3) rests on clearly erroneous fact findings; or (4) follows from a record that contains no evidence on which the [special master] could rationally base [his] decision." *Ninestar Tech. Co. v. International Trade Comm'n*, 667 F.3d 1373, 1379 (Fed.Cir.2012) (quoting *Genentech, Inc. v. United States Int'l Trade Comm'n*, 122 F.3d 1409, 1415 (Fed.Cir.1997)); *see also Sabella v. Secretary of Health & Human Servs.*, 86 Fed.Cl. 201, 204 (2009) ("Under the abuse of discretion standard, this court can only reverse for an error in interpreting law, or exercise of judgment on clearly erroneous findings of material fact, or irrational judgment in weighing relevant factors." (quoting *Plavin v. Secretary of Health & Human Servs.*, 40 Fed.Cl. 609, 622 (1998))).

■ Generally, "[i]f the special master has considered the relevant evidence of record, drawn plausible inferences and articulated a rational basis for the decision, reversible error will be extremely difficult to demonstrate." *Hall*, 640 F.3d at 1354 (alteration in original) (quoting *Hines ex rel. Sevier v. Secretary of Health & Human Servs.*, 940 F.2d 1518, 1528 (Fed.Cir.1991)). Nevertheless, this deferential standard of review "is not a rubber stamp." *Porter v. Secretary of Health & Human Servs.*, 663 F.3d 1242, 1256 (Fed.Cir.2011) (O'Malley, J., concurring in part and dissenting in part). The court can and should intervene "when the special master has failed to adequately develop the record, failed to consider facts critical to the case, failed to give adequate consideration to a viable medical theory, or otherwise misapplied the law." *Snyder ex rel. Snyder v. Secretary of Health & Human Servs.*, 88 Fed.Cl. 706, 718 (2009).

## ANALYSIS

In adopting the Vaccine Act, Congress sought to "establish a [f]ederal 'no-fault' compensation program under which awards can be made to vaccine-injured persons quickly,

easily, and with certainty and generosity." H.R.Rep. No. 99–908, at 3 (2d Sess. 1986), *reprinted in* 1986 U.S.C.C.A.N. 6344, 6344. In keeping with this objective, the Vaccine Program employs a liberal fee-shifting scheme. A prevailing petitioner is automatically entitled to "reasonable attorneys' fees" and "other costs." 42 U.S.C. § 300aa–15(e)(1)(A), (B). Even if a petitioner fails to carry his or her burden of proof and does not establish entitlement, "the special master ... may award an amount of compensation to cover petitioner's reasonable attorneys' fees and other costs incurred in any proceeding on such petition if the special master ... determines that the petition was brought in good faith and there was a reasonable basis for the claim." 42 U.S.C. § 300aa–15(e)(1).

 Ms. Davis bears the burden of demonstrating that she had a reasonable basis for her claim. *McKellar,* 101 Fed.Cl. at 305. "The presence of a reasonable basis is an objective consideration determined by the totality of the circumstances." *Id.* at 303. She also must demonstrate that the number of hours billed by her attorneys was reasonable. *Sabella,* 86 Fed.Cl. at 211 (citing, *e.g., Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). The general rule-of-thumb here is that "[h]ours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Morse v. Secretary of Health & Human Servs.,* 93 Fed.Cl. 780, 790 (2010) (quoting *Saxton,* 3 F.3d at 1521).

### A. The Basis for Ms. Davis's Appeal

The special master denied Ms. Davis's request for fees and costs pertaining to her counsel's work before the Federal Circuit, on the ground that her appeal lacked a reasonable basis. He identified four factors that led to this conclusion. *Davis V,* 2012 WL 1357501, at *12 n. 7. Chief among them was the petitioner's failure to address *Moberly* in her appellate brief. *Id.* at *11.

The special master treated *Moberly* as unambiguously and dispositively rejecting the arguments made by Ms. Davis on appeal. *Davis V,* 2012 WL 1357501, at *11. He interpreted the crux of her appeal to be that

the entitlement decision "wrongly imposed a burden above the standard of biologic plausibility." *Id.* He regarded this avenue of appeal as cut off by *Moberly,* which held that "proof of a 'plausible' or 'possible' causal link between the vaccine and the injury ... is not the statutory standard." *Id.* (quoting *Moberly,* 592 F.3d at 1322). Because Ms. Davis did not attempt to distinguish her case from *Moberly,* the special master found that "Ms. Davis effectively surrendered any argument based upon a legal error" and had no reasonable basis to appeal this court's decision. *Id.* at *12.

 The problem with the special master's analysis is that he drew a direct comparison between incommensurate elements of Ms. Davis's burden of proof. Ms. Davis discussed biological plausibility in the context of the first *Althen* prong. Appellant's Br. at 25 ("*Althen*'s prong 1 is satisfied by showing that it is biologically plausible that a specific vaccine can cause a specific injury."). In contrast, *Moberly* criticized the use of the "plausibility" standard in the broader context of proving causation-in-fact, taking into account all three *Althen* prongs. *See Moberly,* 592 F.3d at 1322. That opinion did not say, as was suggested by the special master, that petitioner's proposed medical theory by itself must meet a particular standard of proof. Rather, *Moberly* applied the "traditional 'more likely than not' standard" to the overall question of whether the vaccine caused the injury in the particular case of the petitioner at bar. *Id.*

In actuality, the standard of proof for the first *Althen* prong standing alone is still an unsettled matter in the vaccine jurisprudence. A judge of this court recently reversed a special master for his mode of applying the more-likely-than-not standard to one but not all of the *Althen* prongs collectively. *Doe 93 v. Secretary of Health & Human Servs.,* 98 Fed.Cl. 553, 566 (2011) ("[T]he [s]pecial [m]aster impermissibly elevated the burden of proof on the requirement that [p]etitioner provide a medical theory causally linking the flu vaccine to [the injury]."). The court ruled that the first *Althen* prong mandated only "a biologically plausible medical theory." *Id.* (citing, *e.g., Andreu ex*

*rel. Andreu v. Secretary of Health & Human Servs.*, 569 F.3d 1367, 1375 (Fed.Cir.2009)). The court in *Doe 93* found that, by elevating the petitioner's evidentiary burden "beyond the realm of biological plausibility into the realm of legal probability," the special master had impermissibly raised the standard of proof for the medical theory. *Id.* at 567; *see also Doe/11 ex rel. Estate of Doe/11 v. Secretary of Health & Human Servs.*, 83 Fed.Cl. 157, 173–174 (2008). Contrastingly, however, another judge on this court has upheld a special master's decision that appeared to address prong one of *Althen* on a discrete basis. *See Caves*, 100 Fed.Cl. at 144 ("[T]he special master properly concluded that petitioner was required to satisfy the first prong of the *Althen* test by a preponderance of the evidence."); *see also id.* at 144 n. 18 (specifically declining to adopt the reasoning of *Doe 93* ).

This court does not propose to take a position on this dispute in addressing attorneys' fees for Ms. Davis. Instead, these cases are cited merely to demonstrate that *Moberly* has not definitively resolved the standard of proof for the first *Althen* prong, standing alone. Rather, on its face *Moberly* reaffirms that the petitioner's *overall* burden is one of a preponderance of the evidence [8]— a proposition never denied by Ms. Davis. *See, e.g.*, Appellant's Br. at 19 ("The standard of proof required by the [Vaccine] Act is simple preponderance of evidence." (quoting *Bunting v. Secretary of Health & Human Servs.*, 931 F.2d 867, 873 (Fed.Cir.1991))). Consequently, petitioner's appeal was not foreclosed by *Moberly*, and her failure to cite to the case cannot be grounds for determin-

ing that her appeal lacked a reasonable basis.[9]

This is not to suggest that neglecting *Moberly* was a prudent decision on the part of Ms. Davis's counsel. Even though that case did not render Ms. Davis's appeal without a reasonable basis, it certainly had a bearing on a number of the issues raised in her appellate brief. The relevance of *Moberly* is reinforced by the fact that each of the three judges on the appellate panel inquired about that precedent during oral argument, with one even going so far as to ask why Ms. Davis failed to mention it in her brief. *Davis IV* Oral Argument at 5:17 to 10:01. Ms. Davis would have been well-served by addressing *Moberly*, perhaps putting that decision in context by comparing it to *Andreu*, 569 F.3d 1367, and *Capizzano*, 440 F.3d 1317. Nevertheless, although this omission may evidence poor practice, it does not indicate that the appeal generally lacked a reasonable basis.

The special master also took into account the government's notice that the United States might contest petitioner's claim for attorneys' fees. *See Davis V*, 2012 WL 1357501, at *3 (quoting Appellee's Br. at 7 n.4); *see also id.* at *2 (quoting Resp't's Resp. to Pet'r's Mot. for Review, May 17, 2010, ECF No. 76, at 7 n.4). This warning related to Ms. Davis's failure to cite to *Moberly*. Appellee's Br. at 3 n.4 ("Petitioner's failure to cite or distinguish *Moberly* in this appeal raises a legitimate question about its frivolousness."). The government shares the special master's expansive reading of *Moberly* and believes that it precluded petitioner's appeal. Nonetheless, because *Moberly* did

---

8. *Moberly*, of course, stands for more than this overly simplistic recital of the statutory standard. The court has commented on the standard of proof only because it was the aspect of *Moberly* to which the special master pointed in his decision on attorneys' fees. *See Davis V*, 2012 WL 1357501, at *11. Notably, *Moberly* also held that "the special master is entitled to require some indicia of reliability to support the assertion of the expert witness [as to the posited biological mechanism]." 592 F.3d at 1324. Ms. Davis did not and has not disputed this holding; in fact, she claimed she provided such "indicia of reliability" in the form of medical records, case reports, and circumstantial support in the medical literature. *See* Appellant's Br. at 31.

9. Further complicating the special master's analysis is the holding in *Capizzano v. Secretary of Health & Human Servs.*, 440 F.3d 1317 (Fed.Cir. 2006). There the Federal Circuit ruled that "evidence used to satisfy one of the *Althen* ... prongs [may] overlap to satisfy another prong." *Id.* at 1326; *cf.* Appellant's Br. at 22 n.13, 33. For example, petitioner's proof concerning *Althen* prongs two and three might supplement her evidence for the first prong. Thus, even if the court agreed with special master that *Moberly* was unambiguous in its approach to *Althen* prong one, it would not necessarily follow that petitioner's cause was frivolous or hopeless.

not dispositively address the issues raised in the appeal, the government's warning was unwarranted, and Ms. Davis did not act unreasonably in failing to heed its admonition.[10]

■ The special master also inferred that the appeal lacked a reasonable basis because the costs of the appeal were taxed to Ms. Davis. *See Davis V*, 2012 WL 1357501, at *12 n. 7. He implicitly assumed that the Federal Circuit would not have taxed costs to Ms. Davis if her case had a reasonable basis. This conjecture is unwarranted, however. The *per curiam* decision disposing of the appeal did not allocate costs one way or the other. The summary disposition citing Fed. Cir. R. 36 was silent on the subject. Rather, the Federal Circuit clerk's entry of judgment provided that Ms. Davis would be responsible for the government's costs. *See* Notice of Entry of Judgment at 1, May 12, 2011, ECF No. 82 ("Costs are taxed against the Appellant(s) in favor of the Appellee(s) under Rule 39."). In doing so, the clerk's office appears to have merely followed Fed. R.App. P. 39(a)(2). This rule states that, "if a judgment is affirmed, costs are taxed against the appellant" barring a court order to the contrary. The special master acted unreasonably in reading an implicit censure in this simple application of the appellate rules of procedure by the Federal Circuit clerk's office.

Lastly, the special master noted that the Federal Circuit issued its decision pursuant to Fed. Cir. R. 36. *Davis V*, 2012 WL 1357501, at *12. Under this rule, the court may enter a judgment without an opinion when "an opinion would have no precedential value" and the decision below was not erroneous. *See* Fed. Cir. R. 36(a), (e). The special master, drawing on *Sparks v. Eastman Kodak Co.*, 230 F.3d 1344 (Fed.Cir. 2000), considered that the use of Rule 36 was further proof that the appeal lacked a reasonable basis. *Davis V*, 2012 WL 1357501, at *12. In *Sparks*, the successful appellee sought sanctions against the appellant for filing an allegedly frivolous appeal. *Sparks*, 230 F.3d at 1345. The appellee argued that such sanctions were warranted because the Federal Circuit had affirmed the lower court's decision via Rule 36. *Id.* Although the Federal Circuit commented that the underlying case had been "an easy one to decide," it nonetheless *denied* the request for sanctions. *Id.*

■ The special master concluded that, because Ms. Davis's appeal was also dispatched by Rule 36, it too must have been "an easy one" for the Federal Circuit to decide. *Davis V*, 2012 WL 1357501, at *12. From this, he inferred that her case probably lacked a reasonable basis. *Id.* This reasoning is not supported by *Sparks*, however. That opinion did not say that an appeal dispatched via Rule 36 was necessarily frivolous. *See* 230 F.3d at 1345 ("This case, like *some* others we hear, was an easy one to decide." (emphasis added)). To the contrary, *Sparks* cautions lower courts from reading too much into a Rule 36 decision. It rejected the appellee's argument that an affirmance without opinion always meant that the appeal was frivolous; according to the court, the only reliable inference from a Rule 36 disposition

---

10. As a general principle, the court is hesitant to give much weight to the government's warnings when addressing whether a petitioner's claim has a reasonable basis. For instance, in opposing the present motion for review, the government chides Ms. Davis for failing to cite to *Perreira v. Secretary of Health & Human Servs.*, 33 F.3d 1375 (Fed.Cir.1994), and includes a similar warning that the omission of this case may render frivolous her motion for review of the special master's fee decision. *See* Resp'r's Resp. to Pet'r's Mot. for Review ("Resp't's Opp'n"), May 16, 2012, ECF No. 98, at 10 n.11. Yet *Perreira* is hardly dispositive of Ms. Davis's request for fees. In *Perreira*, the attorneys learned midway through the litigation that their "expert['s] opinion was grounded in neither medical literature nor studies." 33 F.3d at 1377. Here, the scientific underpinning of Ms. Davis's case has remained as sound as when the petition was first filed. The central contention for doubting the reasonable basis of Ms. Davis's appeal turns on the interpretation of *Moberly*. *Perreira* provides no guidance on this question, beyond the basic notion that a claim can lose its reasonable basis based on fact—a proposition that Ms. Davis has never disputed. And yet the government suggests that *Perreira* is so crucial to the outcome of this motion that Ms. Davis may have acted frivolously in failing to consider and distinguish it. This example demonstrates how, in the heat of litigation, lawyers may be too quick to claim that their opponents are "not deal[ing] fairly with the court" or are "significantly misrepresent[ing] the law." Resp't's Opp'n at 10 n.11 (quoting *Abbs v. Principi*, 237 F.3d 1342, 1345 (Fed.Cir.2001)).

was that "[t]he trial court's explanation for its decision was clear and sound and no useful purpose would have been served by our writing an opinion." *Id.* Taken as a whole, the *Sparks* decision discourages automatically equating Rule 36 with the absence of a reasonable basis.[11]

These flaws in the special master's reasoning demonstrate that he abused his discretion in finding that Ms. Davis lacked a reasonable basis for her appeal. "[B]ecause the special master's decision was not in accordance with law, [this] court [is] permitted to review the evidence anew and come to its own conclusion." *Althen,* 418 F.3d at 1281 (citing 42 U.S.C. § 300aa–12(e)(2)(B)). Given the sufficiency of the record below and the narrow scope of the inquiry, the court is well situated to spare both parties further litigation by making its own finding.

In assessing whether Ms. Davis had a reasonable basis for her appeal, the court gives weight to the outcome of *Calise v. Secretary of Health & Human Servs.,* No. 08–865V, 2011 WL 1230155 (Fed.Cl.Spec.Mstr. Mar. 14, 2011).[12] The facts of *Calise* bear a striking resemblance to petitioner's entitlement claims. Like Ms. Davis, Ms. Calise was stricken with NMO shortly after receiving the influenza vaccine. *Calise,* 2011 WL 1230155, at *1. She sought compensation from the Vaccine Program and hired the same law firm to represent her as Ms. Davis. Ms. Calise even retained the same expert witness, Dr. Steel, to address how the vaccination could have triggered her NMO. *Id.* Yet, in contrast to the outcome of Ms. Davis's case, the special master in *Calise* found that

the petitioner had established causation and was entitled to compensation. *Id.* at *28.

■■■ There is nothing inherently improper in the disparate outcomes of these two cases, of course. A decision by one special master is not binding on another special master, *see Hanlon v. Secretary of Health & Human Servs.,* 40 Fed.Cl. 625, 630 (1998), *aff'd,* 191 F.3d 1344 (Fed.Cir.1999), and there are salient differences between the two cases.[13] Nevertheless, the decision in *Calise* demonstrates that Ms. Davis's underlying entitlement claim was reasonable and that, factually, it retained that reasonableness throughout the appellate process. *Calise* dealt with the same vaccine, the same injury, the same expert, and even the same counsel. If another special master found causation-in-fact under these circumstances, it was not outlandish for Ms. Davis to think that the Federal Circuit might reach a similar conclusion and reverse this court's decision. The divergent outcome in *Calise,* coupled with the *factual* arguments made in petitioner's appellate brief, demonstrate that Ms. Davis had a reasonable basis to appeal the denial of entitlement to compensation.

**B. *The Special Master's Other Reductions***

 1. *Reduced hours for brief writing, preparing for oral argument, and second counsel.*

■■■■ The special master declined to award attorneys' fees for 32.3 hours spent by Ms. Davis's counsel in preparing for and arguing the motion for review. A special master is permitted and even expected to examine a law firm's time sheets and root out

---

**11.** The special master acknowledged as much in his opinion. He disavowed using Rule 36 as a bright line test and noted that special masters have awarded attorneys' fees for appeals that were denied without opinion. *Davis V,* 2012 WL 1357501, at *12 (citing *Hocraffer v. Secretary of Health & Human Servs.,* No. 99–533V, 2011 WL 3705153, at *32 (Fed.Cl.Spec.Mstr. July 25, 2011), *aff'd,* 2011 WL 6292218 (Fed.Cl. Nov. 22, 2011)). He nonetheless listed the Rule 36 affirmance as an "important factor" in his determination. *Id.* at *12.

**12.** The special master does not mention *Calise* in his decision, although Ms. Davis discussed the case in her briefing. *See* Pet'r's Reply to Resp't's Resp. in Opp'n to Pet'r's Appl. for Final Attys'

Fees and Costs, Nov. 17, 2011, ECF. No. 90, at 9–10.

**13.** In addition to serving as Ms. Calise's expert witness, Dr. Steel was also her treating neurologist. *Calise,* 2011 WL 1230155, at *24; *cf. Capizzano,* 440 F.3d at 1326 (recognizing that opinions of treating physicians are due particular respect). Furthermore, Dr. Steel's theory of causation had matured in the year following his testimony in *Davis. Calise,* 2011 WL 1230155, at *17. Knowledge in this field of medicine is increasing rapidly, and further developments enabled Dr. Steel to articulate his theory more persuasively than he could during the *Davis* hearing.

"hours that are excessive, redundant, or otherwise unnecessary" so that they may be "excluded from an award." *Carrington v. Secretary of Health & Human Servs.*, 85 Fed.Cl. 319, 323 (2008) (quoting *Hensley*, 461 U.S. at 434, 103 S.Ct. 1933) (internal quotation marks omitted). In evaluating the requested attorneys' fees, the special master can rely upon his past experiences with the vaccine program to determine whether the time expended on a particular task is justified. *See Saxton*, 3 F.3d at 1521 ("[The special master's] past experience is a relevant factor and should be taken into account."). He is also empowered to deny fees and costs for additional counsel if, in his estimation, the case does not warrant their involvement. *See Hines ex rel. Sevier v. Secretary of Health & Human Servs.*, 22 Cl.Ct. 750, 755 (1991) ("While petitioner points to the 'complex nature of this case,' nowhere does she articulate ... why it was necessary for three members of [the law firm] to be present at that hearing."); *see also Valdes v. Secretary of Health & Human Servs.*, 89 Fed.Cl. 415, 425 (2009); *Sabella*, 86 Fed.Cl. at 213–15.

■ Here, the special master provided lucid explanations for his reductions. First, he deducted 20 hours from the 45 hours billed for drafting the motion for review. *See Davis V*, 2012 WL 1357501, at *5. The special master reviewed the twenty-page motion and found that seven pages were freshly drafted. *Id.* He then awarded compensation for the time it would take a reasonable lawyer to complete the task of preparing the motion: 15 hours to draft the new material, 5 hours to edit the previous thirteen, and an additional 5 hours for paralegal activities such as creating tables and cite-checking the new portion of the brief. *Id.* Because the special master took into account the time taken to integrate prior arguments with newly framed contentions, and did not focus solely on "new material," the court accepts the special master's reckoning.

Second, the special master awarded fees for 14.2 hours spent by Ms. Chin–Caplan in preparing for the hearing on the motion for review, rather than the 17.2 hours sought by petitioner. *Davis V*, 2012 WL 1357501, at

*6. He regarded the time spent by Ms. Chin–Caplan as excessive, given that Ms. Chin–Caplan was the trial attorney and also one of the primary drafters of the motion. *Id.* The special master awarded fees for her preparations while traveling (4.7 hours) and on the morning of the hearing (1.5 hours) because she had little else to do during this time. *Id.* Indeed, other activities probably would have been a counterproductive distraction for her at that time. He also granted fees for a full day of preparing prior to her departure to Washington, D.C. (8 hours). *Id.*

Lastly, the special master denied all fees and costs associated with Ms. Ciampolillo's presence at the hearing. He commented that Ms. Chin–Caplan was capable of arguing the motion for review by herself, as she had done in a number of prior cases. *Davis V*, 2012 WL 1357501, at *7 (citing *Hibbard v. Secretary of Health & Human Servs.*, 100 Fed.Cl. 742 (2011); *Hennessey v. Secretary of Health & Human Servs.*, 91 Fed.Cl. 126 (2010)). He further remarked that there was nothing especially demanding about the case, citing as metrics the number of experts, the duration of the hearing, the number of opposing counsel, and the quantity of medical articles submitted. *Id.* at *7–8. Given the "routine" nature of the case, he ruled that Ms. Ciampolillo's presence was unnecessary.

■ Despite the fact that the court found Ms. Davis's entitlement case to be anything but routine, given the rapidly emerging biological research results, the court finds no evidence that the special master abused his discretion in making these reductions. He provided specific explanations for why he considered certain hours to be unnecessary and how he reflected those reductions in his final award. Indeed, other courts have approved of the techniques he employed in arriving at a final fee amount figure. *See e.g., Hines*, 22 Cl.Ct. at 755 (denying fees for superfluous attorneys attending a hearing). While the court might quibble with some of the numbers derived by the special master, his figures are certainly within the range of reasonableness, particularly considering that he is permitted to draw upon his own experience with the Vaccine Program.

Moreover, Ms. Davis has not alleged any particular error in the special master's reasoning. In fact, her motion for review does not contest the specific deductions imposed by the special master. Instead, petitioner simply expounds on the policy goals of the Vaccine Program and asseverates that every hour expended on the case was reasonable and necessary. Pet'r's Mot. for Review at 15–17. These generic statements cannot substitute for a factual showing of how the special master allegedly abused his discretion in docking 32.3 hours from the time billed by petitioner's counsel. Nor does the court, in its own examination of the decision on attorneys' fees, perceive any error in the special master's determination. The court thus affirms these reductions.

### 2. Alternate holding on fees for the appeal to the Federal Circuit.

Apparently aware that this court might review and reverse his ruling that Ms. Davis lacked a reasonable basis for her appeal to the Federal Circuit from the denial of entitlement, the special master provided an alternate holding, *i.e.*, if petitioner did have a reasonable basis, she would be entitled to only $27,606.65 for counsel's work during the appeal. *Davis V*, 2012 WL 1357501, at *15. A trier of fact manifestly has discretion in awarding attorneys' fees, and two recent Supreme Court cases help demarcate the bounds of that discretion. In *Fox v. Vice*, — U.S. —, 131 S.Ct. 2205, 180 L.Ed.2d 45 (2011), the Court emphasized the flexibility to be accorded trial courts in assessing attorneys' fees. It cautioned appellate courts against requiring trial courts to tabulate fees with the precision of "green-eyeshade accountants." *Id.* at 2216. In applying a fee-shifting statute, the trial court should seek "to do rough justice, not to achieve auditing perfection." *Id.* Thus, for example, "trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id.*

The Supreme Court nevertheless noted that "the trial court must apply the correct standard, and *the appeals court must make sure that has occurred.*" *Fox*, 131 S.Ct. at 2216 (emphasis added). In adding this caveat, the Supreme Court cited approvingly to a case it had decided the previous year, *Perdue v. Kenny A. ex rel. Winn*, — U.S. —, 130 S.Ct. 1662, 176 L.Ed.2d 494 (2010). That case stressed that "the [trial] judge's discretion is not unlimited" in assessing attorneys' fees. *Perdue*, 130 S.Ct. at 1676. "It is essential that the judge provide a reasonably specific explanation for all aspects of a fee determination.... Unless such an explanation is given, adequate appellate review is not feasible." *Id.; cf. Hensley*, 461 U.S. at 437, 103 S.Ct. 1933. Taken together, *Fox* and *Perdue* give considerable latitude to a trier of fact in calculating a specific figure for attorneys' fees, so long as he or she provides a sufficient and lucid explanation of how the amount was derived.

In addition to these Supreme Court opinions, the court is also guided by *Wasson ex rel. Wasson v. Secretary of Health & Human Servs.*, 24 Cl.Ct. 482 (1991), a case which dealt with attorneys' fees in the unique context of the Vaccine Program. There, the petitioner sought review of a reduced fee award ordered by the special master. *Id.* at 483–84. In examining the decision on attorneys' fees, the court found that the special master "presents only a conclusion" without "an appropriate description of the relevant experience and the reasoning that she used" to reach it. *Id.* at 486. Consequently, the court had little choice but to remand the fee award because "the conclusory nature of her statement ... makes it impossible for this court to evaluate whether the special master abused her discretion." *Id.* at 485. Absent an explanation of how the special master arrived at the amount awarded, the court was unable "to perform its review function." *Id.* at 486.

 This court finds itself in a similar predicament to the *Wasson* court with respect to the alternate holding for attorneys' fees on appeal. The special master found that unspecified "portions of Ms. Davis's initial Federal Circuit brief were either copied from or based upon previously written briefs," *Davis V*, 2012 WL 1357501, at *14, and that all but eight pages of her reply brief were likewise duplicated from earlier work,

*id.* at \*15. After noting these areas of repetition, the special master simply states that $27,606.65 would be a reasonable fee. He gives no hint as to how he reached this figure. He may have used the lodestar method, multiplying a reasonable rate by the number of hours he decided counsel should have expended in drafting the appellate briefs. Or he may have lopped a fixed percentage off the total fee requested by Ms. Davis. Or he could have applied some other methodology.

In these circumstances, the court cannot adopt the special master's alternative result. He has not given any indication as to what method he used to derive his result or how he employed it. *Cf. Perdue*, 130 S.Ct. at 1676. Although the special master need not don the green eyeshade of an accountant and provide a line-by-line analysis of each entry in counsel's timesheets, *see Fox*, 131 S.Ct. at 2216, he must nonetheless provide "a reasonably specific explanation for all aspects of [the] fee determination," including his general methodology for arriving at the award amount, *Perdue*, 130 S.Ct. at 1676. Without such an overview, the court can neither discern nor review the basis for the award of $27,606.65. *Id.; see also Wasson*, 24 Cl.Ct. at 486 ("The court cannot evaluate the special master's conclusion ... because the special master simply stated her conclusion without explaining her reasoning."). Consequently, this portion of the fees decision must be set aside and remanded.

### 3. *Alternate holding on costs for the appeal to the Federal Circuit.*

Just as the special master provided an alternate holding for petitioner's appellate fees, so too did he give an alternate holding for her appellate costs. He ruled that, if Ms. Davis did have a reasonable basis for appealing the adverse entitlement decision to the Federal Circuit, she nonetheless would not be entitled to any costs. *Davis V*, 2012 WL 1357501, at \*16. He opined that "an award of costs to Ms. Davis ... would undermine (if not directly contradict) the Federal Circuit's order" that "costs [be] awarded to the appellee." *Id.*

] As the court discussed *supra*, the special master placed too great an emphasis on the clerk's quotidian application of Fed. R.App. P. 39. Although he says that the Federal Circuit ordered costs to be awarded to the government, the affirmance itself did not tax costs to petitioner. Rather, it was the entry of judgment, issued by the clerk's office, which stated that "[c]osts are taxed against the Appellant(s) in favor of the Appellee(s) under Rule 39." Notice of Entry of Judgment at 1, May 12, 2011, ECF No. 82. There is no indication that the Federal Circuit gave the matter of costs any thought whatsoever in issuing its ruling citing Fed. Cir. R. 36. Certainly there is no suggestion that the appellate court sought to foreclose the possibility of an award of costs under 42 U.S.C. § 300aa–15(e)(1). Consequently, the special master acted arbitrarily in refusing to award costs. *Cf. Hocraffer*, 2011 WL 3705153, at \*32 n. 30 (awarding petitioner's costs for appeal even though costs incurred by the government were taxed to petitioner); Notice of Entry of Judgment, *Hocraffer*, No. 99–533V, Feb. 16, 2010, ECF No. 172. The court thus finds that Ms. Davis is entitled to her costs during and for the appeal.

### CONCLUSION

For the reasons stated, petitioner's motion for review of the special master's decision on attorneys' fees and costs is GRANTED IN PART and DENIED IN PART, as follows:

1. The portion of the special master's decision finding that Ms. Davis lacked a reasonable basis for her appeal to the Federal Circuit from an adverse entitlement decision is SET ASIDE and replaced by the court's finding that her appeal had a reasonable basis;

2. The portion of the decision awarding attorneys' fees in a reduced amount for counsel's work preparing and arguing the motion for review of the adverse entitlement decision is AFFIRMED;

3. The portion of the decision stating in the alternative an amount of Ms. Davis's fees for her appeal is SET ASIDE and REMANDED to the special master for further proceedings;

4. The portion of the decision concerning Ms. Davis's costs during her appeal is REVERSED and replaced by the court's own finding that she is entitled to such costs.

In accord with 42 U.S.C. § 300aa–12(e)(2), the court allows 90 days for the completion of proceedings on remand.

It is so ORDERED.